## INDIANA SPRINGS COMPANY v. BROWN.

[No. 20,612. Filed June 1, 1905. Rehearing denied November 14, 1905.]

1. NEGLIGENCE.—*Automobiles.*—*Roads and Streets.*—It is not negligence as a matter of law to run an automobile on the public highways. p. 468.

2. SAME.—*Automobiles.*—*Use of Highways.*—*Care Required.*— The driver of an automobile has equal rights with others in the use of the public highways, but he must use such highways consistently with the proper use of same by others. p. 468.

3. HIGHWAYS.—*Use of.*—*New Conveyances.*—New conveyances for travel on the public highways are not prohibited by the law, but their use must conform to reasonable methods insuring the largest amount of enjoyment of the highway by the general public. p. 469.

4. SAME.—*Automobiles.*—*Negligence.*—The driver of an automobile, using a public highway, must carefully operate his machine to prevent needless injury, taking into consideration the character of the machine, its appearance, noise, new use in the vicinity, tendency to frighten horses and all other circumstances. p. 469.

5. NEGLIGENCE.—*Highways.*—*Automobiles.*—*Use of.*—The driver of an automobile who sees plaintiff's horse frenzied by fright at the noise, appearance and rapid approach thereof and he continues to run his machine toward plaintiff who is on the approach of a bridge on the public highway and unable to escape and he thereby causes plaintiff's horse to run away and to injure plaintiff, is guilty of negligence. p. 470.

From Fountain Circuit Court; *Joseph M. Rabb,* Judge.

Action by Thomas Brown against the Indiana Springs Company. From a judgment for $925, defendant appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Affirmed.*

*James McCabe* and *Edwin F. McCabe,* for appellant.
*C. V. McAdams,* for appellee.

HADLEY, J.—This is an action by appellee to recover for personal injuries and injuries to his horse and buggy alleged to have been the result of appellant's negligence in unreasonably and unnecessarily speeding and refusing to stop or slow up its automobile, thereby causing the plaintiff's horse to take fright and run away. The complaint is in two paragraphs, alike in all respects, except one is for personal injuries, and the other for damages to the horse and buggy. A demurrer to each paragraph of the complaint was overruled. Answer, the general denial. Trial by jury. Verdict and judgment for appellee, from which the defendant appeals. The assignment challenges the action of the trial court in overruling the demurrers and the motion for a new trial.

Each paragraph of the complaint for negligence is based on two grounds: (1) Violation of the speed ordinance of the city of Attica; and (2) negligence in operating the automobile. The court excluded from the jury the ordinance relied upon, and it is manifest from the record that the case was tried upon the charge of negligence in operating the motor carriage. Among other things, it is alleged that the automobile complained of was twelve feet long, five feet wide, eight and one-half feet high, had a canopy top, elevated seats for passengers, was painted red, propelled by a gasoline engine, made a great noise, was the first machine of the kind in the community, and its appearance and unusually rapid and noisy movement in the highway were calculated to, and did, greatly frighten horses unaccustomed to see the like; that on May 10, 1902, the plaintiff and

companion were traveling in a buggy, drawn by one horse, to the city of Attica. The horse was gentle and well broken, but had never before met an automobile in the highway. Having passed over the bridge of the Wabash river, and while descending the approach thereto, which is twenty feet wide, with precipitous banks and guard fence on each side for a distance of 230 feet to a cross-street, the defendant, by its servants and agents in charge of said automobile, approached the plaintiff from the opposite direction, driving said machine along the highway at great speed, to wit, twenty miles an hour, thereby causing it to give forth a loud whirring, puffing, buzzing noise, that could be heard several hundred yards. As soon as the automobile approached within seeing and hearing distance, plaintiff's horse became greatly frightened at the appearance, sound and approach of the same, and plaintiff and his companion signaled and called out to said servants and agents to stop until the plaintiff and his companion could escape on said cross-street. The said servants and agents could plainly see, and did see, from the horse's conduct, that he was greatly frightened, and could have stopped the machine before it reached and passed the plaintiff, "but the plaintiff avers said servants so in charge of such automobile wholly disregarded the plaintiff's signals and entreaties to stop, but, on the contrary, negligently, wantonly and insolently continued to drive the monster machine upon the plaintiff and his horse at the reckless speed and in the reckless and negligent manner aforesaid, and, when the same came up to the plaintiff and his conveyance, his horse became thereby so frenzied with fright, caused by the rapid speed, unsightly and unusual appearance of the machine, and the unusual and alarming noises given forth by it, that it became wholly unmanageable and beyond control, and did run away and overturn the buggy, throwing the plaintiff out, whereby," etc.

It can not be said as matter of law that appellant was guilty of negligence for using an automobile as a means of conveyance on the public highway. The law does not denounce motor carriages, as such, on the public ways. For so long as they are constructed and propelled in a manner consistent with the use of highways, and are calculated to subserve the public as a beneficial means of transportation, with reasonable safety to travelers by ordinary modes, they have an equal right with other vehicles in common use to occupy the streets and roads. Because novel and unusual in appearance, and for that reason likely to frighten horses unaccustomed to see them, is no reason for prohibiting their use. In all human activities the law keeps up with improvement and progress brought about by discovery and invention, and, in respect to highways, if the introduction of a new contrivance for transportation purposes, conducted with due care, is met with inconvenience and even incidental injury to those using ordinary modes, there can be no recovery, provided the contrivance is compatible with the general use and safety of the road.

It is, therefore, the adaptation and use, rather than the form or kind of conveyance, that concerns the courts. It is improper to say that the driver of the horse has rights in the road superior to the driver of the automobile. Both have the right to use the easement, and each is equally restricted in the exercise of his rights by the corresponding rights of the other. Each is required to regulate his own use by the observance of ordinary care and caution to avoid receiving injury, as well as inflicting injury upon the other. And in this the quantum of care required is to be estimated by the exigencies of the particular situation; that is, by the place, presence or absence of other vehicles and travelers; whether the horse driven is wild or gentle; whether the conveyance and power used are common or new to the road, and the known tendency of any feature to frighten animals, etc.

The restrictions which the law imposes upon all modes of travel and traffic on the highways are such as tend to secure to the general public the largest enjoyment of the easement, and must be observed and borne by all alike on the broad ground that all have an equal right to travel in safety; and when accidents happen as incidents to reasonable use and reasonable care the law awards no redress. "When the highway is not restricted in its dedication to some particular mode of use," says Cooley, C. J., in *Macomber* v. *Nichols* (1876), 34 Mich. 212, 217, 22 Am. Rep. 522, "it is open to all suitable methods; and it can not be assumed that these will be the same from age to age, or that new means of making the way useful must be excluded merely because their introduction may tend to the inconvenience or even to the injury of those who continue to use the road after the same manner as formerly. A highway established for the general benefit of passage and traffic must admit of new methods of use whenever it is found that the general benefit requires them." *Knight* v. *Lanier* (1902), 74 N. Y. Supp. 999; *Mason* v. *West* (1901), 70 N. Y. Supp. 478; *Shinkle* v. *McCullough* (1903), 25 Ky. L. Rep., pt. 2, p. 1143, 77 S. W. 196; Elliott, Roads and Sts. (2d ed.), §851; *Bogue* v. *Bennett* (1901), 156 Ind. 478, 482, 83 Am. St. 212, and cases cited.

Applying the foregoing principles to the facts alleged in the complaint, and appellant, in operating on the highway a novel wheeled conveyance of uncommon appearance and making an unusual noise, owed to the plaintiff and other travelers the duty of carefully controlling and driving the same along so as to avoid causing needless injury. This duty required appellant to take into account the character of its machine, its general appearance, the loud puffing noise sent forth while going, its new use in the vicinity, its tendency to frighten horses, and from these and all other pertinent considerations proceed with that speed and caution which reasonable care requires, according to the place and the presence of other travelers.

It is alleged that the defendant, by its servants and agents, drove its automobile towards the plaintiff at the rate of twenty miles an hour; that at the time the plaintiff was descending in his buggy, drawn by a gentle horse, along a narrow, side-guarded approach to the Wabash bridge, whence he could not escape without proceeding forward to a cross-street 230 feet from the bridge; that it was impossible for him to escape by said cross-street before being met by the on-coming automobile; that the plaintiff's horse became frightened at the noise and appearance of the approaching machine, and plaintiff and his companion called to and signaled the servants of defendant to stop and give them time to escape by said side street, but, although said servants saw said signals, and the frightened condition of plaintiff's horse, and could have stopped said automobile so as to enable the plaintiff to escape by said side street, they failed and refused to do so, and, coming up to the plaintiff, his horse became frenzied with fright, unmanageable, and ran away, throwing the plaintiff from the buggy, thereby inflicting severe injuries, etc.

The conduct of the defendant here averred falls far short of being warrantable under the circumstances described. As drivers about to meet on the road, each owed the other the reciprocal duty to conduct himself and conveyance in a manner to avoid placing the other in jeopardy. And when the defendant saw that the plaintiff's horse had become frightened at the rapid approach of the strange, noisy carriage, and that the plaintiff was in danger, which was reasonably certain to increase by the nearer approach of the motor, and from which it was plain he could not extricate himself, except by defendant's stopping or slowing down to enable the plaintiff to reach the cross-street, it was the highest moral as well as legal duty of the defendant to stop and remove the plaintiff's peril, rather than increase it by rushing onward. Counsel for appellant argue that, since it is not shown by the complaint

that defendant knew the cause of the fright of the plaintiff's horse, it fails to show negligence.    Will any one seriously say that the driver of such an automobile, recently brought to the vicinity, may speed it at twenty miles an hour along the highway towards approaching harnessed horses, puffing and whirring so as to be heard several hundred yards away, and, seeing a horse in front of him, hitched to a buggy, rearing, plunging and trying to bolt from the road without any other apparent cause, is justified in maintaining his speed because he does not know what it is that causes the horse's fright?   Such contention is not argument.   Any reasonable chauffeur, inclined to respond to the simplest offices of humanity, would not think of circumscribing his conduct under such circumstances by the rules of the law, even if such rules lead to the absurd limits suggested.   The law of the road does not tolerate any such inconsiderate and reckless disregard of the rights of other travelers on the highway.   *Cincinnati, etc., R. Co.* v. *Long* (1887), 112 Ind. 166, 172; *Citizens St. R. Co.* v. *Hamer* (1902), 29 Ind. App. 426, 436; *Citizens St. R. Co.* v. *Lowe* (1895), 12 Ind. App. 47, 54; *Vincent* v. *Norton, etc., St. R. Co.* (1901), 180 Mass. 104, 61 N. E. 822; *Benjamin* v. *Holyoke St. R. Co.* (1893), 160 Mass. 3, 35 N. E. 95, 39 Am. St. 446.

Appellant assails divers instructions given by the court in accordance with the views above expressed, and complains of the court's refusal to give others requested by the defendant, expressing a contrary doctrine, a review of which would lead to repetition and serve no useful purpose. A review is therefore omitted.   The evidence abundantly supported the verdict.   We find no error in the record.

Judgment affirmed.