# The State v. Goodwin.

[No. 21,029. Filed November 5, 1907.]

1. STATUTES.—*Criminal.*—*Interpretation.*—While strict construction still prevails in the interpretation of a criminal statute, in modern times the interpretation is made to accord with reason and common sense, so that the legislative intent may honestly be carried out. p. 267.

2. SAME.—*Automobiles.*—*Use of Highways.*—*Stopping on Signal.*— The act of 1905 (Acts 1905, p. 202, §5, §8703e Burns 1905), requiring persons using motor vehicles upon public highways to stop on signal to allow teams to pass, was intended to protect travelers from the fright of their horses. p. 267.

3. WORDS AND PHRASES.—*"Driving."*—*Statutes.*—*Automobiles.*— The word "driving," as used in §8703e Burns 1905, Acts 1905, p. 202, §5, requiring persons using motor vehicles upon the public highways to stop so that persons "driving a horse, horses or other draft animals," may pass, includes as its subject not only the person actually directing the horse or horses, but also those riding in the vehicle and not directing. p. 268.

4. INDICTMENT AND INFORMATION.—*Automobiles.*—*Failure to Stop on Signal.*—An indictment charging that defendant automobilist failed to stop his carriage upon a signal from a companion of the

person driving a horse, hitched to a buggy, upon a public highway, sufficiently charges an offense under §8703e Burns 1905, Acts 1905, p. 202, §5, requiring persons using motor vehicles to stop upon the giving of a signal by any person "driving a horse" or other farm animal.  p. 268.

From Dekalb Circuit Court; *Frank M. Powers,* Special Judge.

Prosecution by the State of Indiana against Samuel Goodwin.  From a judgment for defendant, the State appeals. *Reversed.*

*James Bingham,* Attorney-General, *A. G. Cavins, H. M. Dowling, E. M. White* and *Charles S. Smith,* Prosecuting Attorney, for the State.

*Willis Rhoads, George W. Crooks* and *J. E. Pomeroy,* for appellee.

HADLEY, C. J.—A prosecution was lodged against appellee for an alleged refusal to stop his automobile on the public highway when signaled to do so by the prosecuting witness. The prosecution was based upon the act of March 6, 1905 (Acts 1905, p. 202, §5, §8703e Burns 1905).  So much of said section as is material in the case is as follows:  "Any person or persons operating a motor vehicle shall, upon meeting any person or persons riding, leading or driving a horse, horses or other draft animals or other farm animals on any public highway, upon request or signal by putting up the hand from any such person or persons so riding, leading or driving any horse, horses or other draft animals or other farm animals (if in sufficient light for such signal to be perceptible) immediately bring his motor vehicle to a stop and remain stationary so long as may be reasonable to allow such horse, horses or other draft animals or other farm animals to pass."

The affidavit charges, in substance, that Rosa and Josie Case, while driving in a buggy on a certain public highway, met the defendant traveling in the opposite direction in an automobile; that Rosa was directing the horse and Josie was

sitting by her side in the buggy; that the horse becoming frightened at the automobile Rosa became so engrossed in holding and directing said horse that she was unable to raise her hand to . signal the defendant to stop, without relaxing her hold on the lines, and thereby losing her control of said horse, whereupon Josie, for and on behalf of Rosa, and with the latter's knowledge and consent, raised her hand and signaled the defendant to stop, which he failed and refused to do, though there was sufficient light for him to see such signal.

. The question for decision is: To constitute an offense, does the statute require the danger-signal to be given by the driver or manager of the horse in person, or may it be given by another occupant of the vehicle, authorized to act for the driver, or is it sufficient for any occupant of the vehicle, upon his own initiative, to give the signal?

While the rule of strict construction applies generally to the interpretation of criminal statutes, the excessively strict construction that formerly prevailed has in recent years been so modified as to look within the bounds of reason and common sense to the legislative intent when plainly manifested or expressed in the enactment. Courts, on the one hand, refusing to hold those not clearly brought, within the scope of the statute, and, on the other hand, equally refusing, by radical refinement, or unreasonable or incongruous construction, to discharge those plainly within its scope. Gillett, Crim. Law (2d ed.), §§19, 20; *Daniels* v. *State* (1898), 150 Ind. 348, and authorities cited; *State, ex rel.,* v. *Roby* (1895), 142 Ind. 168, 33 L. R. A. 213, 51 Am. St. 174; *Fahnestock* v. *State* (1885), 102 Ind. 156, 162.

It is obvious that the legislative purpose in enacting the law under consideration was to provide protection to travelers on the public highway by vehicle from the dangers incident to the fright of an animal, attached to such vehicle, at the approach of an automobile.

There could have been no reason for the lawmakers to design a greater protection for the driver or director of the animal than for other occupants of the vehicle, who would be equally exposed. We are, therefore, unable to give the statute the narrow and severe construction contended for by the appellee, and which seems to have been placed upon it by the court below.

"Driving," in its popular sense, means more than mere managing or directing a horse. It has, at least, a dual signification. When it is said a party goes out "driving" or "boating," it is not usually understood that each member of the party performs the physical act of driving the horse, or of rowing the boat. The Standard Dictionary defines the word "drive" thus: "To ride in a vehicle drawn by horses or other animals, or to direct or control the animals that draw it." A driving party may be referred to collectively. By eliminating the singular number "person" from the statute, we have the following as applicable to this case: Any person or persons operating a motor vehicle shall, upon meeting any persons driving a horse on any public highway, upon request or signal by putting up the hand from any such persons so driving any horse (if in sufficient light to be perceptible), immediately bring the motor vehicle to a stop and remain stationary so long as may be reasonable to allow such horse to pass. Here we have it in plain English that any person operating an automobile on the highway, if he meets persons driving a horse, shall stop the automobile upon receiving a signal "by putting up the hand from any such persons so driving," etc.

Even a strict construction would require us to hold that any occupant of the vehicle may give the signal. A contrary construction would be without the letter, as well as without the spirit of the statute. It would seem highly unreasonable, if not absurd, so to interpret the law as to exonerate the driver of an automobile who refuses to heed a signal of distress, on the ground that

it was not given by the driver in person. Such a rendering would give immunity in many aggravated cases the statute is especially aimed at, namely, where the driver became so engrossed by his efforts to restrain the frightened animal as to be unable to give the signal, as alleged in this case. It is hardly too much to say that it was the legislative view that when a driver of an automobile is appealed to to stop, when approaching a vehicle drawn by a frightened animal, if his sense of moral or social duty is not strong enough to induce him to do so, the rigor of the law should be interposed. The averment of the affidavit that the signal was given by Josie Case, for and on behalf of Rosa Case, should be regarded as surplusage.

The judgment is reversed, with instructions to overrule the motion to quash the affidavit.

Gillett, J., absent.