# JOHN MESSER v. HENRY BRUENING.

(— L.R.A.(N.S.) —, 142 N. W. 158.)

Plaintiff, driving south with a single horse and buggy, in the daytime, met defendant driving an automobile, on a level prairie highway, unfenced, without embankments, and with plowed fields on either side. Upon meeting, defendant ran the machine to his right side of the road, near the plowed field to his east. The only substantial conflict in the testimony is as to whether his approach was at a reasonable speed, and whether the machine was stopped after its turn to the right. Plaintiff, in the meantime, kept the road, without attempting to turn to his right, thus driving his horse nearer to the machine, when the horse became unmanageable, turned toward the machine, and crossed in front of it into the east field. Plaintiff, in stopping the horse, pushed out the front of the buggy box, and received injuries for which he seeks to recover damages. During defendant's approach with the machine, plaintiff's wife, occupying the seat with him, raised her hands and screamed to defendant to stop the automobile, plaintiff meanwhile continuing to drive toward it but giving no signal himself for the machine to stop. The condition of the road was such that plaintiff could have turned off the beaten track and to his right, and kept a reasonable distance from the automobile. The complaint seeks (1) a recovery for defendant's negligence at common law on specific grounds alleged, and (2) for negligence and damages resulting because of defendant's alleged failure to heed the alleged statutory signal to stop, given by plaintiff's wife to the automobile driver. The trial court instructed upon both theories, to the effect that the signal of the wife was a signal by the driver. From an $800 recovery, defendant appeals. It is *Held:*—

Instructions — jury — negligence — ordinary care — verdict — pleading — specific negligence.

(1) The court gave the following instruction: "If ordinary care or prudence required Henry Bruening to do some particular thing which he failed to do upon this occasion, then he is guilty of negligence." This was error in that it permitted the jury to speculate upon what might be negligence, and base their verdict upon something they might infer to be negligence other than the specific negligent acts charged in plaintiff's complaint.

Vehicle — signal — automobile — driver — occupant — liability — negligence — common law — question for jury.

(2) The statutes of this state, as amended by chapter 42 of the Session Laws

---

Note. — As to the duty and liability of the operator of an automobile with respect to horses encountered on highway, see notes in 1 L.R.A.(N.S.) 223, and 14 L.R.A. (N.S.) 251.

of 1909, specifically require that such signal shall be given by the driver of an animal-propelled vehicle, and the signal by an occupant is insufficient to constitute the statutory signal to be given by the driver. Until such signal is given by the driver, no liability under the statute for failing to stop attaches. But, in the absence of a signal, a failure to stop, or a failure to heed signals given by other occupants of the vehicle than the driver, may be matters for the jury with all the facts of the case upon questions of common-law negligence involved.

Opinion filed May 17, 1913.   Rehearing denied June 19, 1913.

From a judgment of the District Court for Foster County, *Coffey,* J., defendant appeals.

Reversed and new trial granted.

*T. F. McCue,* for appellant.

The plaintiff should not have been permitted to give his conclusions to the jury that the buggy was all right.   American Soda Fountain Co. v. Hogue, 17 N. D. 375, 17 L.R.A.(N.S.) 1113, 116 N. W. 339.

Natural or imminent dangers do not necessarily follow or result from the use of an automobile.   Expressions of such character by the court in its charge to the jury are prejudicial error.   Moffitt v. Cressler, 8 Iowa, 122; Farr v. Fuller, 8 Iowa, 347.

Unsupported and misleading instructions constitute reversible error. Mundhenk v. Central Iowa R. Co. 57 Iowa, 718, 111 N. W. 656; Mannion v. Talboy, 76 Neb. 570, 107 N. W. 750; Kilpatrick v. Richardson, 37 Neb. 731, 56 N. W. 481; Lang v. Bailes, 19 N. D. 582, 125 N. W. 891; Pattee v. Chicago, M. & St. P. R. Co. 5 Dak. 267, 38 N. W. 435.

Our laws regulate the use of automobiles.   Rev. Codes §§ 2173, 2174; as amended by chap. 42, Laws 1909.

It is error for the court to place before the jury, in its instructions, matters and questions not presented in the pleadings.   Stein v. Seaton, 51 Iowa, 18, 50 N. W. 576; Whitsett v. Chicago, R. I. & P. R. Co. 67 Iowa, 150, 25 N. W. 104; Cressy v. Postville, 59 Iowa, 62, 12 N. W. 757; Barron v. Northern P. R. Co. 16 N. D. 277, 113 N. W. 102; Forzen v. Hurd, 20 N. D. 42, 126 N. W. 224; Sargent v. Linden Min. Co. 55 Cal. 204, 3 Mor. Min. Rep. 207; Western Home Ins. Co. v. Thorpe, 40 Kan. 255, 19 Pac. 631.

The court has no right to tell the jury they can give a verdict for any stated amount. 11 Enc. Pl. & Pr. 96; Pierce v. C. H. Bidwell Thresher Co. 153 Mich. 323, 116 N. W. 1104; Staal v. Grand Street & N. R. Co. 107 N. Y. 625, 13 N. E. 624, 5 Am. Neg. Cas. 273; Britton v. Grand Rapids Street R. Co. 90 Mich. 164, 51 N. W. 276, 4 Am. Neg. Cas. 123.

Instructions should be so framed and given as to guide the jury in considering the issues. Chicago City R. Co. v. Rohe, 118 Ill. App. 322; Coates v. Burlington, C. R. & N. R. Co. 62 Iowa, 493, 17 N. W. 760.

There was no evidence of permanent injury. Illinois Iron & Metal Co. v. Weber, 196 Ill. 526, 63 N. E. 1008; Moorehead v. Hyde, 38 Iowa, 382; Reed v. Chicago, R. I. & P. R. Co. 57 Iowa, 23, 10 N. W. 285; Barron v. Northern P. R. Co. 16 N. D. 277, 113 N. W. 102, and cases cited; Leeds v. Metropolitan Gaslight Co. 90 N. Y. 26; Chicago & A. R. Co. v. Martin, 120 Ill. App. 254; Cicero & P. Street R. Co. v. Richter, 85 Ill. App. 591.

The defendant's request for instructions as to the position and acts of the parties at time of accident, as shown by the evidence, should have been granted. Rochford v. Barrett, 22 S. D. 83, 115 N. W. 522; Garland v. Keeler, 15 N. D. 548, 108 N. W. 484.

*Edward P. Kelly,* for respondent.

The driver of an automobile should use reasonable care in its operation according to place and presence of other travelers. Indiana Springs Co. v. Brown, 165 Ind. 465, 1 L.R.A.(N.S.) 238, 74 N. E. 615, 6 Ann. Cas. 656, 18 Am. Neg. Rep. 392.

Facts testified to from personal observation are not conclusions. 2 Jones, Ev. p. 805; Betts v. Chicago, R. I. & P. R. Co. 92 Iowa, 343, 26 L.R.A. 248, 60 N. W. 623; Kelleher v. Keokuk, 60 Iowa, 473, 15 N. W. 280; Smalley v. Iowa P. R. Co. 36 Iowa, 571; Ferguson v. Davis County, 57 Iowa, 601, 10 N. W. 906; Funston v. Chicago, R. I. & P. R. Co. 61 Iowa, 452, 16 N. W. 518; Baltimore & O. R. Co. v. Rambo, 8 C. C. A. 6, 16 U. S. App. 277, 59 Fed. 75; Winter v. Central Iowa R. Co. 80 Iowa, 443, 45 N. W. 737.

The court's charge to the jury on the matter of dangers natural to the use of automobiles was proper. The charge must be considered in its entirety. House v. Cramer, 134 Iowa, 374, 10 L.R.A.(N.S.) 655, 112 N. W. 3, 13 Ann. Cas. 461; Wolfe v. Des Moines Elevator Co. 26 Iowa, 659, 98 N. W. 301, 102 N. W. 517; Shinkle v. McCullough, 116

Ky. 960, 105 Am. St. Rep. 249, 77 S. W. 196, 15 Am. Neg. Rep. 63; Knight v. Lauier, 69 App. Div. 454, 74 N. Y. Supp. 999, 12 Am. Neg. Rep. 157.

What defendant should have done, or should not have done at the time of the accident, is a question for the jury in determining the question of ordinary and reasonable care. Christy v. Elliott, 216 Ill. 31, 1 L.R.A.(N.S.) 215, 108 Am. St. Rep. 196, 74 N. E. 1035, 3 Ann. Cas. 487; Murphy v. Wait, 102 App. Div. 121, 92 N. Y. Supp. 253; Thies v. Thomas, 77 N. Y. Supp. 276; Mahoney v. Maxfield, 102 Minn. 377, 14 L.R.A.(N.S.) 251, 113 N. W. 904, 12 Ann. Cas. 289.

Court has the right to call the jury's attention to the amount they may give, under the pleadings. Ladd v. Witte, 116 Wis. 35, 92 N. W. 365; Trumble v. Happy, 114 Iowa, 624, 87 N. W. 679.

Where there is evidence of probable permanent injury, the question is properly submitted to the jury. Ashley v. Sioux City, — Iowa, —, 93 N. W. 303; Cotant v. Boone Suburban R. Co. 125 Iowa, 46, 69 L.R.A. 982, 99 N. W. 115, 16 Am. Neg. Rep. 26; Westercamp v. Brooks, 115 Iowa, 159, 88 N. W. 372; Wimber v. Iowa C. R. Co. 114 Iowa, 551, 87 N. W. 505; McCord v. Minneapolis, St. P. & S. Ste. M. R. Co. 96 Minn. 517, 105 N. W. 190; Ladd v. Witte, 116 Wis. 35, 92 N. W. 365.

Theories cannot be submitted to juries as proper questions for their consideration, unless supported by competent evidence. Smith v. Sedalia, 152 Mo. 283, 48 L.R.A. 711, 53 S. W. 907; Sprague v. Fletcher, 69 Vt. 69, 37 L.R.A. 840, 37 Atl. 239; State v. Coleman, 186 Mo. 151, 69 L.R.A. 381, 84 S. W. 978; Mitchell v. Charlestown Light & P. Co. 45 S. C. 146, 31 L.R.A. 577, 22 S. E. 767; Christy v. Elliott, 216 Ill. 31, 1 L.R.A.(N.S.) 215, 108 Am. St. Rep. 196, 74 N. E. 1035, 3 Ann. Cas. 487.

It is not error to refuse requested instructions, when questions involved are covered by general instructions. Burdict v. Missouri P. R. Co. 123 Mo. 221, 26 L.R.A. 384, 45 Am. St. Rep. 528, 27 S. W. 453; Western Assur. Co. v. J. H. Mohlman Co. 40 L.R.A. 561, 28 C. C. A. 157, 51 U. S. App. 577, 83 Fed. 811; Savannah, F. & W. R. Co. v. Daniels, 90 Ga. 608, 20 L.R.A. 416, 17 S. E. 647; Harris v. United States, 8 App. D. C. 20, 36 L.R.A. 465; Denver & R. G. R. Co. v. Roller, 49 L.R.A. 77, 41 C. C. A. 22, 100 Fed. 738.

Goss, J. Defendant appeals from an order denying a motion for new trial. Plaintiff recovered a verdict for $800, based upon injuries caused by the horse he was driving becoming frightened at an automobile owned and operated by defendant. The accident occurred on a level prairie where both parties had plenty of opportunity to avoid trouble. The road was of the usual four rods in width, with no embankments, and with plowed fields on either side. The immediate cause of the injury was the dashboard and front of the single buggy giving way when plaintiff attempted to control his horse, allowing him to slide forward into a dangerous position, immediately behind and almost against the animal. He sustained an injury to his leg, for which he has asked judgment for $3,200, made up of items of $2,000 for damages because of pain and injury suffered, $1,000 special damages for loss of time, and $200 special damages for medical attendance and treatment. The jury allowed a lump sum of $800.

Defendant, Bruening, had shortly before the accident been at the house of one Albus, situated about a half mile west of the main north and south highway. In coming from the house he had approached the highway from the west, and, upon reaching it, turned south, and had gone some distance, variously stated by witnesses to be from no distance at all to a mile, when he discovered that the radiator of the automobile needed water, and because of which he turned around to go back to the Albus place to fill it. He had two ladies in the car. One of them, who had often driven this automobile, was driving. Soon afterwards the two vehicles met while plaintiff was going south and defendant north on the level highway. When defendant had reached the highway coming from the Albus place, and first turned south, the plaintiff, who was also going south, was several hundred feet north of the point where defendant came into the highway. The defendant had driven the automobile, a two-seated Buick machine, for two years and was an experienced driver. The plaintiff was driving a young horse hitched to a single buggy. The accident occurred on the 8th of May, 1910. Plaintiff had purchased the horse and buggy in March of that year. His wife was with him. Both plaintiff and defendant lived in Carrington, and the accident occurred about 6 miles south of that place, defendant having, on the way out to the Albus place, overtaken and passed the plaintiff some little time previously.

The accident occurred in broad daylight. The distance between the two approaching vehicles from the time defendant turned around to go back for water is variously placed at from a mile to less than a block. The plaintiff testifies that he was about 500 feet to the north of the point where defendant entered the highway on turning south coming from Albus's place. As the accident occurred some distance south of such point, the automobile must have gone a considerable distance south before turning, to have given plaintiff the time to drive the 500 feet and such additional distance as he was past the intersection of the road coming from the farmhouse with the highway. Had plaintiff not been south of this intersection, defendant would not have met him while returning, as he was, to the Albus house. During this time defendant was traveling southward, as he states, at a speed of from 15 to 18 miles an hour, and so constantly increasing the 500-foot distance intervening between plaintiff and the machine when the machine turned into the highway and went south. The only possible reasonable conclusion from the evidence is that the automobile had traveled southward to such a distance after it turned into the highway, and that at the time of turning around to return for water defendant was so far distant from the plaintiff's rig that no negligence can be predicated upon either the fact of the turning or the manner in which it was done, or upon any noise or smoke, so-called, from the machine at that point in the occurrences. Any negligence in the case, then, must have occurred later, as the parties approached or passed each other. Concerning this the testimony of all witnesses (including the plaintiff himself), except the testimony of the wife of the plaintiff, establishes that as the vehicles approached one another the machine left the beaten track, turned to the right nearly to the extreme edge of the road close to the plowing, leaving a rod or more intervening between it and the beaten track upon which plaintiff kept his horse; plaintiff meanwhile made no effort upon the approach of the automobile to turn to the right or in any way to avoid accident. This he admits, giving as a reason that he had no time to do so because of the speed at which the automobile approached him. There is competent testimony that as the vehicles approached one another plaintiff's wife threw up her hands and called for defendant to stop. Whether the machine stopped at once is in conflict, but the preponderance of the evidence is to the effect that it did, while the jury

in finding this verdict must have found that it did not. The defendant and another occupant of the car testified positively that the car was stopped at once. A bystander testifies to seeing it standing still there. And we understand plaintiff's testimony to admit that it stopped. Speaking of the automobile, he says: "It came close, and had to stay, and the horse started to jump." Whether it stopped or not, the plaintiff, for some reason, turned his horse to his left and toward the side from which the automobile was approaching, and while the automobile was on the outside of the highway the horse dashed in front of it eastward, into the plowed field. While on the field, in attempting to stop the animal, the plaintiff placed his feet against the dashboard, which gave way, letting him out almost upon the horse. He then lost hold of the left rein, retaining the right one, causing the horse to immediately circle to his right some 150 or 200 feet, going from the east field across the road into the west one, at which place plaintiff's wife, who had fallen out of the rig in the field, met the horse, stopped it, unhitched, released her husband from his predicament, rehitched the horse to the buggy, and both drove on. The rig was not upset, and doubtless no injury would have resulted to either of the occupants had not the front of the single buggy given way.

Defendant is charged with negligence in approaching at a dangerous and unreasonable rate of speed, making an unusual and loud noise with the machine, causing it to emit and throw out great clouds of smoke, running it without a muffler attached, needless blowing of the horn, whistle, or trumpet on approaching, making unnecessary noise to frighten the horse, failure to stop the machine when the horse was observed to be frightened, failure to stop on command of the plaintiff, and wanton negligence in making unnecessary noise with the machine and its whistle or trumpet, and in running the machine in too close proximity to the plaintiff's horse so as to make it unmanageable,—all to the injury of the plaintiff resulting therefrom. On the proof it develops that any negligence on the defendant's part in this case must be found elsewhere than in any violation of statute by failing to stop the machine when requested to do so, as plaintiff, the driver of the horse, did not signal to defendant to stop. The whistle or trumpet described in the complaint is reduced by the testimony to the ordinary rubber bulb horn.

Four of defendant's assignments of error concern the admission of testimony. We have examined them carefully, and consider them not well taken. The remaining assignments concern the instructions. The court gave a lengthy instruction, entirely in the abstract, and upon the whole strongly favorable to the plaintiff. The appellant complains of the refusal of the court to give the following instruction:

"In this case it is the contention of the defendant that at the time he was approaching the plaintiff on the highway where the accident took place, that he had turned to the right-hand side of the road, out of the traveled track, and was approaching the plaintiff and his horse at a reasonable rate of speed; and that as soon as he observed that the plaintiff's horse was becoming frightened he immediately stopped his automobile, and that thereupon the plaintiff's horse shied to the right of the defendant and went around the automobile. I charge you that if you find from the evidence in this case that the defendant is correct in his contentions, then he was using and exercising toward the plaintiff all the caution imposed by law; and if you so find from the evidence and the facts surrounding this case then your verdict should be for the defendant."

This requested instruction omitted to include a statement covering diligence and care on the part of defendant to observe any fright of the plaintiff's horse. In other words, defendant could have been negligent in failing to have promptly observed the animal if frightened, and continued on his way until he actually observed it, while in the exercise of prudence he should have observed the fright and stopped the automobile before he did. The requested instruction does not cover this feature of the approach, concerning which defendant may have been negligent, and all the facts be true mentioned in the request. Hence the court properly refused it.

But such requested instruction did bring to the attention of the court one element of the case on which the jury are not informed by the court's instructions, and that is under what specific circumstances they should exonerate defendant from negligence if they found he did stop his automobile after turning out of the traveled track to the right edge of the road. The facts were not complicated. The evidence was not voluminous. To have instructed upon this point would have been a simple matter. The court need not have invaded the province of the

jury in doing so, and the jury should have been instructed on defendant's contention under his theory of the facts by an instruction after such endeavor to obtain it by the request made. While the court properly refused the requested instruction, he did not cover defendant's theory of defense.

Defendant excepts to the following instruction given: "If ordinary care or prudence required Henry Bruening to do some particular thing which he failed to do upon this occasion, then he is guilty of negligence."

This instruction is justly subject to criticism. It left the jury to speculate as to whether Henry Bruening failed "to do some particular thing," within or without the evidence, which the jury might infer, surmise, imagine, or conclude to be negligence, or whether the same was one of the many acts of negligence specified in the complaint or covered by it. Besides, it in effect held the defendant responsible for any act the jury might have inferred was a negligent act, whether the same was or was not the proximate cause of the injury.

It is true that this instruction follows a proper general instruction upon negligence. Immediately following in the same paragraph, the court gave the instruction excepted to which could not have been other than prejudicial under the pleadings and the circumstances shown by the proof. It was followed with this direction of the court: "With these general statements of the law you will inquire, first, whether the defendant was or was not negligent upon the occasion referred to." With the jury following this direction, it is but natural that some or all of the jurors, in scanning the testimony to determine defendant's negligence, may have found sufficient to convict him of negligence because he failed to alight from his automobile and escort this horse past the machine, notwithstanding plaintiff testifies he (plaintiff) was driving in the track, making no effort to turn out and momentarily coming in closer proximity to defendant's machine. No apparent necessity for alighting and assisting plaintiff may have existed, yet defendant may be held for that as an act of negligence as the basis for the verdict, though the complaint does not, either specifically or with reasonable inference, include as an act of negligence such an omission to assist the plaintiff. And this very omission to assist, not plead as negligence, is one of the things most probable for the jury to have seized

upon as an act of negligence which was left to them to consider, and which they might have concluded was all-sufficient upon which to base their verdict under the specific instruction complained of. Defendant has excepted to this instruction and briefed error upon it. He says the jury "is not confined to the evidence or any fact which the plaintiff claimed resulted to his injury." This brings to our attention the question of whether the omission, in the instruction excepted to, to instruct that the particular thing constituting negligence must have contributed to the injury complained of, conceding that the instruction is otherwise proper, is waived by proper instructions elsewhere in the charge upon proximate cause. Upon careful examination of the entire charge we find proximate cause is not mentioned except in connection with two specific matters of negligence set forth in the complaint. The court omitted to instruct the jury of the necessity, before plaintiff's recovery, that the jury should find that any negligence or negligent acts of the defendant must have been the proximate cause of the accident, or the fright to plaintiff's horse, or the injuries sustained resulting therefrom. Instead, the jury are instructed: "Before the plaintiff can recover in this action he must satisfy you by a fair preponderance of the evidence that the defendant was guilty of negligence in handling and operating the automobile upon the highway at the time and place described in the complaint. And the burden of proof is also upon the plaintiff to establish by a fair preponderance of the evidence the amount of damages which he has sustained." And again: "Therefore, in order that the plaintiff can recover in this action he must establish to your satisfaction by a fair preponderance of the evidence that the defendant was guilty of negligence." And then again: "So, if you shall be of the opinion that the defendant was negligent, you will pass to the question, Was the plaintiff guilty of negligence?" Then, again, at the close of the instruction upon negligence, we find the following: "There are two main questions for you to consider in this case, determinative of the defendant's liability, Was the defendant negligent? If he was, then the plaintiff will be entitled to recover at your hands. On the other hand, if the defendant either was not negligent, or if the plaintiff was guilty of contributory negligence, then the plaintiff will not be entitled to recover." Immediately after which the court instructed upon damages. These excerpts from the opinion illus-

trate the entire omission of the court to instruct upon proximate cause, the consideration of which is involved in this instruction excepted to, inasmuch as the instruction excepted to is also faulty because of such omission concerning proximate cause. Defendant has not excepted to all of these instructions, nor has he assigned error because proximate cause was not defined to the jury, but its consideration is raised in determining the propriety of this faulty instruction, wherein the jury were instructed: "If ordinary care and prudence required Henry Bruening to do some particular thing, which he failed to do upon this occasion, then he is guilty of negligence." It may be urged that the defendant could not have been negligent in the occurrences in evidence without such negligence having been the proximate cause of the accident. Our reply would be that this was a question of fact for the jury, not a question of law for the court; and to hold as a proposition of law that it is unnecessary to instruct upon proximate cause, in an action to recover for defendant's negligence, wherein contributory negligence also is plead, is the equivalent of holding defendant liable for negligence whether a proximate or remote cause of the injury. And such were the instructions of the trial court. It is elementary that without proof that negligence is the proximate cause of an injury, negligence is not actionable. And the facts illustrate the necessity for an instruction upon proximate cause, as the jury may have, within the evidence and also within the charge of negligence laid in the complaint, and following instructions, found that when defendant turned his automobile north, perhaps a quarter of a mile in front of plaintiff's horse, that he might there have done some negligent act, which in itself could not have been a proximate cause of the accident occurring some minutes later from a different cause. But yet, under an instruction informing the jury that the only questions in the case were defendant's negligence and plaintiff's contributory negligence, in effect that if defendant was negligent and plaintiff was not, plaintiff should recover, a recovery may have been awarded upon defendant's remote negligence. Hence the true issues of law and fact were not submitted to the jury. But, in the absence of any instruction upon proximate cause, such was the only meaning to be given to the instructions: "These are the two main questions for you to consider in this case, determinative of defendant's liability. Was the defendant negligent? If he was, then was the plain-

tiff guilty of contributory negligence? If he was not, then the plaintiff will be entitled to recover at your hands." When construed with the particular instruction excepted to and under discussion it is impossible to sustain this recovery for two reasons,—first, the verdict may have been rendered on negligence not plead; and, second, if upon negligence plead, the verdict may be based upon negligence not the proximate cause of the injury, and therefore negligence not actionable. A new trial therefore must be granted.

Defendant also requested the following instruction, which was refused, upon which error is assigned: "The law imposes an equal degree of care, prudence, and caution upon both the plaintiff and defendant in this case. If at the time the plaintiff met the defendant he was driving a horse which would become frightened or shy upon approaching an automobile, or if the plaintiff had reasons to believe that the horse he was driving would become frightened or shy at an automobile that was approaching him in a careful, proper manner, then the law required the plaintiff to use the care and prudence that a reasonably prudent man would have used under similar circumstances to avoid injury. This would require that the plaintiff should turn his horse out of the traveled highway, to the right, a reasonable time before meeting such automobile; also to signal by raising his hand in time so as to apprise the defendant of the fact that he was driving a horse of such disposition."

That portion of the request stating that the law requiring that plaintiff should turn his horse out of the traveled highway, to the right, at a reasonable time before meeting such automobile, may be a matter for the jury, and not for the court, to determine; and because thereof the instruction requested was properly refused. But the latter part of the requested instruction brings up the statutory duty of the plaintiff to signal if he desired defendant to stop the automobile, and under which defendant in his brief urges: "The law required that this signal be given so as to attract the attention of the driver of the automobile, and the signal must be given by the driver of the horse. It is not enough that, this signal should be given by someone who happened to be in the rig."

Inasmuch as this is but a portion of an instruction properly refused, we could conclude a discussion of this subject by the simple statement

that the requested instruction as a whole contained matter improper to be given, and that if improper for any purpose it was for all, and refuse to consider that portion of the instruction raising the question of whether a signal to stop given by an occupant, instead of a driver, of an animal-drawn vehicle, to the driver of an automobile, is a sufficient signal under the statute. In other words, whether defendant was obliged under the statute to stop the automobile on the signal of the occupant of the rig, or be guilty of a misdemeanor and perhaps negligence *per se* for violation of this statutory command to stop when signaled by the driver of the approaching animal-drawn vehicle. But a new trial is necessary for reasons heretofore given.

The complaint seeks damages both for common-law negligence and for negligence based upon an alleged statutory duty for failing to stop when signaled. The complaint in such respect alleges: "And that this plaintiff, when a reasonable distance from said automobile, signaled the said defendant to stop the said automobile," which defendant failed to do, resulting in injuries complained of and sued for. The court in its instructions treated the action as in part a recovery sought for negligence resulting from a violation of the statute in question. The jury were instructed: "If the plaintiff in this action signaled the defendant to stop his automobile at any time when the automobile was approaching his horse, it was his duty to stop it as soon as he reasonably could in the exercise of ordinary care; and injuries resulted because he failed to do that, then he would be liable to the plaintiff in this action. He would, in other words, be guilty of negligence."

No proof of the disregard of the statute is in the case unless it be assumed, as did the court on the trial, that the exclamations of the wife and the signals given by her be considered the same as though given by plaintiff. And this raises the question whether an occupant of a vehicle is a driver within the meaning of our statute, § 2173, Rev. Codes 1905, as amended by chap. 42 of the Laws of 1909. This question apparently will be necessarily involved in a new trial, as at no place does plaintiff testify or claim that he personally gave any signal to the motorist to stop. Instead he testifies as follows:

Q. When you saw them turning around in the road, what did you do?

A. Did not do anything. . . . I drove slowly. I drove it right along to meet the automobile on the right-hand side of the road. I was right in the road on the main track. It came close and had to stay, and the horse started to jump.

Concerning the signal, his wife's testimony is:

I know Henry Bruening could see us all the time. I knew the law was to put up your hands and stop an automobile. I knew it at that time. I know what you mean by the law. It is to raise my hands. The law says when an automobile comes you ought to raise your hands.

Q. Who told you that?

A. I know what people ought to do in passing and driving automobiles; I knew that was the law.

Q. So you raised your hands?

A. You bet. I raised my hands, and if he was not blind he could see.

Our statute, said chapter 42, provides:

"The driver or operator in charge of any automobile or motor cycle on any public road or highway outside the limits of any town, village, or city within this state, when signaled by the driver of any vehicle propelled by horses or other animal power, which signal shall be given by raising the hand or in such other manner as to attract attention, shall stop said automobile or motor cycle until the vehicle propelled by said animal power has passed; and if approaching said vehicle from behind, the driver or operator in charge of said automobile or motor cycle shall stop for a reasonable time, and the driver of said animal-propelled vehicle shall, as soon as the condition of the road will permit, turn to the right and allow at least one half of the road on his left for the passage of said automobile."

The penalty for violation of this statute by either driver may be fine and imprisonment, "and the person so offending shall be liable in a civil action for damages to any person who shall have been injured, in person or property, by reason of such violation." This penal statute must be given such construction as will give effect to the legislative intent; yet there is nothing in the statute, in express terms or by reasonable or necessary inference, to authorize the statutory signal to be given by

one other than the driver of the animal-drawn vehicle. Stripped of unnecessary terms it reads:

"The driver . . . of any automobile . . . when signaled by the driver of any vehicle propelled by horses . . . . shall stop said automobile . . . until the (horse-drawn vehicle) . . . has passed."

The companion portion of the statute provides that the driver of an animal-propelled vehicle, approached from behind by an automobile, shall turn to the right and allow one half of the road for the passage of the automobile. The failure to obey this law of the road in such particulars constitutes, in either case, a misdemeanor. But the criminal and civil responsibility is placed solely upon the drivers of the respective vehicles. No occupant other than a driver can be held in either case civilly or criminally responsible as for violation of this statute. The driver is named as the responsible party required to signal, and whose signal is required to be noticed by the other driver; and thus by necessary implication the right of any other person, occupant, or bystander to give the statutory signal is excluded. And this is so for good reasons. The plaintiff is the person who was responsible for the manner in which this horse was controlled. It is his negligence or contributory negligence for which he is held responsible. It is his horse. As an owner he is presumed, in law and in fact, to know it and its characteristics, habits, and disposition, gentleness or viciousness, better than any other person, and sense more fully and quickly than any occupant of the rig an actual dangerous situation. He knows, or is presumed to know, when he has control of the animal. He, as a driver, is required to exercise care and diligence in driving at this as in all similar situations. And he, upon whose acts safety depends, it not depending upon any occupant of the rig, is charged with knowledge of the law and the duty to act with reference thereto. He must know that the automobile driver must look to him, as the person in control of his part of the situation, as the proper person to and charged with the duty of giving the warning signal, and until such warning is given by signal, shouting or otherwise, the automobile driver had the right to assume it was unnecessary to stop, so long as he was using due care and ordinary caution not to frighten the horse in passing upon the meeting of such vehicles. In other words, until the driver of the horse shall give the statutory

signal, it is not given in fact or law, even though an occupant or occupants of the horse-drawn vehicle may, on their own initiative, signal the automobile to stop. The testimony of the wife, above quoted, furnishes the best of reasons for our conclusions. Every motorist has probably experienced, on numerous occasions, similar exclamations, show of hands, and signals from the rear seat of a horse-drawn vehicle, while the driver at the same time signals the automobile to proceed. Mrs. Messer's testimony is that she began to signal as the automobile was turning, and the physical facts, under even her own testimony, liberally construed in her favor as the party giving it, establish that from 500 feet to a quarter or possibly half a mile intervened between the two rigs when the automobile turned around to return to the Albus place and when she says she began signaling. The only conclusion must be that if the plaintiff's wife did signal defendant, by waving her hands when he turned back north, it would be absurd to say that the legislature ever meant to place the right to signal under such circumstances upon this occupant of a rig who, if the signal made be held to be a statutory signal as claimed, thereby made a disregard of it by an automobile driver, even at such a distance, a crime, granting that her testimony is correct that he must have seen it had he not been "blind." It may be urged that at times the driver of a rig may be so engaged with the control of the horse as to be unable to signal. This might be true if the only way he could signal was to raise his hand, but a signal given by shouting is a signal under the statute, providing "that it may be given in such other manner as to attract attention." No hardship in any event lies upon the driver, who should not be afforded opportunity to fail to himself signal, to hazard upon his ability to drive his fractious, unruly horse, equally dangerous as the auto to traffic, by the motor; and when he fails, complaint that it was the entire fault of the motorist, and mulct him for damages, because some nervous, irresponsible, aged person riding with him has, perhaps without apparent good cause, raised her hands or screamed, which he may seek to claim, as here, has established negligence *per se*. Besides, the legislature has not said that the statutory signal must be given or no right of action for damages will lie. In each case it usually must go to the jury under proper instructions. As no statutory signal was given to the driver of the motor vehicle to stop, no liability based upon a failure to comply with

chapter 42 is shown.   In support of our conclusions, see Mahoney v. Maxfield, 102 Minn. 377, 14 L.R.A.(N.S.) 251, 113 N. W. 904, 12 Ann. Cas. 289.   This case is under a statute very similar to ours.   The trial court instructed that such a statute, framed in general words, made it the duty of the motorist to stop his motor, and that stopping the machine was not enough.   On appeal the instruction was held erroneous, the court refusing to enlarge the statute by construction.   The supreme court of Kansas in an opinion filed April 12, 1913, on all fours with this case, exonerates the motorist under a more stringent statute than ours with closer facts.   See Sterner v. Issett, 89 Kan. 357, 131 Pac. 551.   Accordingly we hold that the legislature knew what they desired to say, and said exactly what they meant when they required the signal to come from the driver, and from no one else.   To hold otherwise would be to distort plain language and to judicially legislate.   State v. Goodwin, 169 Ind. 265, 82 N. E. 459, apparently is contrary to our holding, but upon inspection it will be noticed that the statute there construed was much broader than ours, and probably required the construction there given.

Other instructions given the jury to which exception is taken are "but on account of the fact that an automobile is a somewhat novel means of transportation over public highways, and on account of the fact that it appears strange to the ordinary horse, makes an unusual noise, there are certain duties which the driver of an automobile should observe peculiar to the character of the instrumentality which he uses." Counsel for appellant has excepted to this as an unwarranted assumption of fact in stating as facts certain matters to the jury not in evidence, and that the court has assumed that an automobile is a novel means of transportation, and that it appears strange to the ordinary horse, and makes an unusual noise.   He urges that as one of the matters of negligence charged in the complaint is the unusual noise so made, the assumption of it as a fact by the court was prejudicial error.   Such instructions have been held proper in the early automobile cases.   Counsel for respondent cites many of them, among which are Indiana Springs Co. v. Brown, 165 Ind. 465, 1 L.R.A. 246, 74 N. E. 615, 6 Ann. Cas. 656, 18 Am. Neg. Rep. 392; Christy v. Elliott, 216 Ill. 31, 1 L.R.A. (N.S.) 215, 108 Am. St. Rep. 196, 74 N. E. 1035, 3 Ann. Cas. 487; Shinkle v. McCullough, 116 Ky. 960, 105 Am. St. Rep. 249, 77 S. W.

196, 15 Am. Neg. Rep. 63. These, like all other authorities, must be read in the light of contemporaneous events and of the knowledge had at that time of the gasolene motor, and of the present-day knowledge of its subsequent development. The automobile has been perfected and brought to its present general use within the last ten years. Historians may properly characterize this as the period of the development of the internal combustion motor. A reading of some of the cases cited by counsel for the respondent is interesting in illustrating the trouble there taken to minutely describe an automobile. The wonder is not at the unanimity with which, in these cases, findings of negligence are affirmed with scant proof of actual negligence on the part of the motorist, as courts apparently were as far from indulging in any leniency toward "devil wagons" as were the juries in passing *pro forma* upon the fact of negligence of the motorist. No reason exists to longer make the automobilist an insurer in fact against damages resulting from such accidents. In theory they were not, but in practice they were, such insurers. The present-day automobile is a nearly perfect piece of machinery, to the use of which farm horses have long since become accustomed. The fact that about 10,000 are registered in this state alone is ample proof of that. They are no longer to be termed novel, and they do not make an unusual noise. The instruction proper to give in early cases should no longer be approved. When the reason for a rule ceases the rule itself should cease.

Whether any negligence as charged in the complaint has been shown we do not decide. Inasmuch as no motion for a directed verdict was made, both counsel assuming that there was sufficient evidence to warrant the submission of the issue of negligence to the jury, we have assumed, without deciding, that there is some substantial evidence of negligence.

Exceptions have been taken to the measure of damages, but it is unnecessary to pass upon them. The judgment appealed from is set aside and the case remanded for further proceedings, appellant to recover costs on this appeal. It is so ordered.

FISK, J. (dissenting). I am unable to concur in the views of the majority. The verdict concededly has ample support in the evidence, and from my view point no substantial or prejudicial error was com-

mitted by the trial court in its instructions to the jury or otherwise. I refrain from setting forth *in extenso* my views on the law points presented, as no useful purpose would be thereby subserved. Suffice it to say that in my opinion the judgment should be affirmed.