STATE OF MISSOURI, Respondent, v. JOHN R. WILSON, Appellant.

St. Louis Court of Appeals, March 2, 1915.

1. **STATUTES: Construction: Penal and Criminal Statutes.** Penal and criminal statutes must be strictly construed in favor of the defendant and against the State, both as to the charge and the proof; and while this does not mean that no regard is to be had to the intent and spirit of the statute when construing its liberal terms, it does mean that the statute cannot be extended beyond the plain meaning and purport of the language employed.

2. **AUTOMOBILES: Failure to Stop on Signal: Criminal Offense: Statute Construed.** The driver of an automobile who failed to stop the same was not guilty of the offense denounced by Laws 1911, page 326, Sec. 8, requiring the driver of a motor vehicle, on signal by raising the hand from a person riding, leading or driving a horse or horses or other animals, to bring such motor vehicle immediately to a stop, where the driver of a team merely called to him to stop, but did not raise his hand, although others riding in the wagon did raise their hands, since the statute does not require automobile drivers to observe signals from persons other than the driver of the animals.

Appeal from Dunklin Circuit Court.—*Hon. W. S. C. Walker*, Judge.

REVERSED.

*R. A. Cox, J. L. Downing; C. M. Edwards* and *H. N. Phillips* for appellant.

Sec. 8, p. 376, Acts 1911 being a statute with a penalty, must be strictly construed. No guess work or inferences should be indulged in the interpretation of penal statutes. The uniform rule is that such statutes should be strictly construed and not extended or enlarged by judicial construction so as to embrace offenses or persons not plainly within their terms. State v. Kooch, 202 Mo. 223, 235. The above statute creates a rule in derogation of common-law right and must be strictly construed. Nicholas v. Kelly, 159 Mo. App. 20, 25.

*R. J. Smith,* prosecuting attorney, and *Tribble & Donaldson* for respondent.

ALLEN, J.—Defendant was convicted of violating section 8 of the Act of 1911, entitled "Motor Vehicles" (laws 1911, p. 326). His punishment was assessed at a fine of twenty-five dollars, and he appeals.

The information charges that on August 7, 1911, the defendant was operating and driving a motor vehicle, to-wit an automobile, along a public highway in Dunklin county, "going in an opposite direction to one A. A. Davidson who was then and there driving a team of mules along and on said public highway;" and that the defendant unlawfully neglected, failed and refused "to slow down and stop said motor vehicle, when lawfully requested and signalled so to do, by the said A. A. Davidson and Henry Davidson."

Upon the occasion in question A. A. Davidson was driving a team of mules attached to a wagon, and proceeding in an easterly direction along the highway mentioned in the information. There were several occupants of this wagon. In front of it was another wagon, and behind it was a buggy occupied by two men,

one of them being A. A. Davidson's father, Henry Davidson. The defendant's automobile, driven by defendant, turned into this road a short distance east of these vehicles, and proceeded toward and passed them.

On behalf of the State the evidence is to the effect that, as the automobile approached, A. A. Davidson stood up in the wagon holding the reins, anticipating that the mules would become frightened; that he called to defendant to stop, and that one Boyd, sitting in the rear seat of this wagon, raised his hand as a signal to defendant to stop; and that Henry Davidson, in the buggy in the rear but who was not driving the same, signalled to defendant in like manner.

Defendant testified that he saw no signals from anyone; that he observed the team of mules as he approached them, and saw that the driver thereof was standing, but that the mules did not appear to be frightened until just as he passed them. He testified that he heard no one call to him until just as he passed the mules. Another occupant of the automobile testified that he saw no signals; and his testimony in other respects is substantially the same as that of defendant. The evidence is that the speed of the automobile was about eight miles per hour. It appears that the mules did not run away, though it is said that they attempted to run but were at once stopped, and no damage was done.

Under the facts disclosed in evidence it is clear that the conviction cannot be sustained. The prosecution is based upon the above-mentioned statute, which went into effect on August 1, 1911, one week prior to the alleged commission of the offense charged; it proceeds upon the theory that the defendant unlawfully neglected, failed and refused to stop his automobile when signalled to do so. The portion of the statute with which we are here concerned provides that one operating or driving a motor vehicle shall, "on signal by raising the hand, from a person *riding*,

*leading or driving a horse or horses or other animals,*
bring such motor vehicle immediately to a stop.''
(Italics ours.)   In the case before us the State's evi-
dence is, and it is conceded, that the driver of the
mules did not in fact give any signal at all.   It is
contended, however, that the statute should be con-
strued so as to require the driver of a motor vehicle
to give heed to a signal of the character mentioned in
the statute when given by any occupant of a vehicle
drawn by horses or other like animals.   But this view
cannot be sustained.   The statute is both penal and
criminal.   It must be strictly construed in favor of
the defendant and against the State both as to the
charge and the proof.   [State v. McMahon, 234 Mo.
611, 137 S. W. 872; State v. Howard, 137 Mo. 289, 38
S. W. 908; State v. Schuchmann, 133 Mo. 111, 33 S. W.
35, 34 S. W. 842.]   While this does not mean that no
regard is to be had to the intent and spirit thereof,
when construing its literal terms, it does mean that
the statute cannot be extended beyond the plain mean-
ing and purport of the language employed.

The charge in the information that defendant
failed to stop his automobile in compliance with a sig-
nal given by Henry Davidson, who was in another
vehicle, is mere surplusage, and it is not contended
that the conviction may be sustained by proof of the
giving of such signal.   The contention is that the
evidence adduced to the effect that a signal was given
by Boyd, who was on the rear seat in A. A. David-
son's wagon, is sufficient to sustain the conviction.
But in the face of the plain language of the statute,
which can in nowise be extended by implication, this
contention cannot be upheld.   It is reasonable to sup-
pose that the Legislature intended, so far as concerns
this phase of the statute, that the driver of a motor
vehicle should have regard to the person driving or
in charge of the animal or animals in question, and
that he be required to act upon signal from such per-

son only. It may readily be assumed that the statute was designedly drawn in this respect, with the idea that the driver, or person in charge of the animal or team, is in a position to know whether or not a signal to stop is necessary, and that he will timely give one if there be any need therefor.

It is urged that, inasmuch as the evidence shows that the driver upon this occasion was using both hands in holding the reins to control the team and was thus unable to signal, a signal given by any other occupant of the vehicle should be held to be sufficient. But we cannot thus extend the scope and operation of this statute. One observing a team and its driver may not see a signal given by some other person, and defendant testified that he did not see this signal; but it is sufficient to say that the statute does not fasten criminal liability upon the driver of a motor vehicle for failure to observe and obey such a signal. And this is the only question here involved. [See Messer v. Bruening, 25 N. D. 599; 48 L. R. A. (N. S.) 945.]

If the construction of this provision of the statute renders it a "dead letter," as respondent's counsel contends, which we do not concede, then the remedy must be sought at the hands of the lawmakers. The language of the act is clear and unambiguous, and not of doubtful import; and we cannot, under the guise of judicial construction, read into it something which the Legislature did not see fit to place therein.

The judgment should be reversed and the defendant discharged. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.