Decker vs. McSorley.

●

DECKER, Administrator, Respondent, vs. McSORLEY, Appellant.

111      91
59 LRA  926

*May 23 — June 20, 1901.*

*Municipal ordinances: Pleading: Animals running at large: Knowledge of owner: Killing of child: Contributory negligence: Instructions to jury: Proximate cause: Evidence: Expectancy of life and of pecuniary benefit to parents.*

1. A municipal ordinance may be pleaded by stating its substance and legal effect, without referring to its title or the date of its passage.
2. An ordinance provided that " no horse . . . shall be permitted to run at large in the city at any time, nor be herded or pastured in or upon any street of said city, nor be permitted to graze or feed in any of said streets, except in such parts of said street as are in front of or adjoining lands owned or occupied by the owner or keeper of the animal grazing or feeding thereon," etc. *Held*, that

the exception was not to the prohibition against running at large, but to the prohibition against grazing or feeding, and that to be within the exception the animal must not only be in front of its master's premises, but must also be attended or be securely tethered and not at large.

3. One purpose of such ordinance was to protect persons from injury, and its violation is ground for a claim of negligence in an action for personal injury inflicted by a horse so running at large.

4. Evidence that the horse inflicting such injury had frequently been at large in the streets was admissible as tending to show that it was at large with the knowledge and assent or permission of the defendant, its owner.

5. Absence of a strong, healthy boy, four and one-half years old, from home, unattended, upon a residence street, in the daytime, is insufficient of itself to warrant a holding that his parents were guilty of negligence as matter of law.

6. In one part of a charge attempting to define "proximate cause" the use of the word "not" rendered the instruction the exact reverse of what it should be, and the element of natural and probable consequence, contained in another part of the charge, was omitted. *Held,* that the whole charge on the subject was confusing and calculated to mislead the jury.

7. In an action for the death of a child four and one-half years old, it was error to admit in evidence a mortality table showing the expectancy of life of a child ten years of age, but not that of a child four and one-half, where the witness admitted that the expectancy of the latter was less than that of the child of ten, but could not state what it was.

8. Evidence that a boy four and one-half years old was strong and healthy at the time he was killed, that his father had no property and had a wife and four children,— with no showing as to the health of the parents, their age, or the earning capacity of the father,— is insufficient to justify a jury in finding that there was any reasonable expectancy of pecuniary benefit to the parents from the continuance of the boy's life beyond minority.

APPEAL from a judgment of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Reversed.*

This is an action by the plaintiff, as administrator of the estate of one Blair Decker, deceased, to recover damages for the death of said Blair Decker, such death having resulted from the kick of a horse owned by the defendant.

The evidence showed that the accident happened upon Caledonia street, in the city of La Crosse; that Blair Decker, the deceased, was a boy four and one-half years of age, and was the son of the plaintiff; that on the morning of September 23, 1899, a horse owned by the defendant was grazing on Caledonia street, in the city of La Crosse, unattended and not tethered; that the place where the horse was grazing was in front of a lot owned by the defendant and occupied by a tenant; that the plaintiff and his family lived on the same street, at a short distance from the place where the horse was grazing; and that at some time between 8 and 9 o'clock a. m. upon the date named the deceased came along the street alone and passed close by the horse, and while he was doing so the horse turned and kicked him in the head, inflicting injuries from which he died a few days later. The complaint alleged that there was an ordinance of the city of La Crosse, in force, prohibiting animals from running at large in the public streets, and also that the horse was vicious in his disposition, and known to be so by the defendant, and that she negligently permitted the horse to run at large in the public streets, and that the death of the deceased was the result of such negligence. The complaint further alleged that the deceased was a strong, healthy boy, and that the plaintiff and his wife were entitled to and dependent upon his services. The answer admitted the death of the boy and the relationship of the parties, as well as the due appointment of the plaintiff as administrator, and denied all the other allegations of the complaint.

A special verdict was rendered in the action as follows:

"(1) Was the defendant's horse running at large in the streets of the city of La Crosse at the time of the alleged injury? Yes. (2) In case you answer question No. 1 in the affirmative, then was the defendant negligent in permitting the horse to be at large at the time of the injury to the deceased child? Yes. (3) In case you answer question No. 2 in the affirmative, then was such negligence the proximate

cause of the death of the child? Yes. (4) At the time of the alleged injury, was the horse feeding in the public highway upon lands owned by the defendant? *By the court:* Yes. (5) Were the parents of the deceased child guilty of any want of ordinary care which in any way contributed to the injury? No. (6) Had the defendant's horse any propensity to kick or bite? No. (7) If you answer question 6 in the affirmative, then had the defendant ever had any knowledge or information of any such propensity on the part of the horse to kick or bite? No. (8) Was section 1 of Ordinance 21 of the city of La Crosse in force on the 23d day of September, 1899? *By the court:* Yes. (9) In case you find the plaintiff is entitled to recover under the law, at what sum do you assess his damages? One thousand dollars."

Judgment for the plaintiff was rendered upon the verdict, and the defendant appeals.

For the appellant there was a brief by *Paul W. Mahoney*, *Thomas Morris*, and *Higbee & Bunge*, and oral argument by *E. C. Higbee*. To the point that evidence of other specific instances when defendant permitted her horse to run at large was inadmissible, they cited *Kaufer v. Walsh*, 88 Wis. 69; *Nash v. Hoxie*, 59 Wis. 384; *People v. Gibbs*, 93 N. Y. 470; *Thompson v. Bowie*, 4 Wall. 463.

For the respondent there was a brief by *Bleekman & Bloomingdale*, and oral argument by *F. H. Bloomingdale*. They contended, *inter alia*, that in all cases where it becomes material to inquire as to whether an act is wilful or intentional, or where it is essential to show notice to the party, or knowledge on his part of the existence of certain facts, evidence of collateral facts of a similar nature upon other occasions is always admissible. 1 Jones, Ev. § 146; *Shaw v. Sun Prairie*, 74 Wis. 105; *Alberts v. Vernon*, 96 Mich. 549; *People v. Gibbs*, 93 N. Y. 470. It was negligence *per se* upon the part of the defendant to permit the horse to run at large in the city in violation of the ordinance. *Baldwin v. Ensign*, 49 Conn. 113; *Smith v. Milwaukee B. & T. Exch.* 91 Wis. 360; *Klatt v. N. C. Foster L. Co.* 97 Wis. 641, 646. The question of contributory negligence on the part of the child's

parents was one for the jury.   Beach, Contributory Negli-
gence (2d ed.), §§ 278, 281;  *Cosgrove v. Ogden*, 49 N. Y. 255;
*McGarry v. Loomis*, 63 N. Y. 104;  *Birkett v. Knickerbocker
I. Co.* 110 N. Y. 504;  *Keyser v. C. & G. T. R. Co.* 56 Mich.
559;  *Johnson v. C. & N. W. R. Co.* 56 Wis. 274.

WINSLOW, J.   The plaintiff predicated his claim of negli-
gence on the part of the defendant in this case upon two
grounds: first, on the ground that the horse was permitted
to be at large in the  street in violation of the  terms of an
ordinance of the city of La Crosse; and, second, on the
ground that the horse was a vicious horse, and was permit-
ted to be at large by the defendant with knowledge of its
vicious character.

It is claimed by the defendant that the ordinance was
not sufficiently pleaded to entitle it to be admitted in evi-
dence.   The complaint alleged generally that at the time
of the injury one of the ordinances of the city of La Crosse,
duly enacted, prohibited the running at large of horses
within the limits of said city, and that  said ordinance pro-
vided, among other things, that the owner or person in
charge of such animal who should permit the same to run
at large within the limits of the city contrary to the pro-
visions of the ordinance should be punished by fine.   This
was, we think, entirely sufficient, as against an objection
made upon the trial.   The ordinance was pleaded by stat-
ing its substance and legal effect.   A foreign statute may
be pleaded by stating its terms, without referring to its title
or the day of its passage.   *Central T. Co. v. Burton*, 74 Wis.
329.   No reason exists why a stricter rule should be applied
to the pleading of a city ordinance.

The ordinance was introduced in evidence, and sec. 1
thereof reads as follows:

"No horse, sheep, goat, swine, mule, colt, goose or cattle,
nor any poultry, turkeys or chickens shall be permitted to
run at large in the city at any time, nor be herded or pas-

tured in or upon any street of said city, nor be permitted to graze or feed in any of said streets, except in such parts of said street as are in front of or adjoining lands owned or occupied by the owner or keeper of the animal grazing or feeding thereon, and if found running at large, each and every one of the animals aforesaid may be impounded under the provisions of this ordinance, in any public pound of the city, and any owner or owners of the animals above specified, or any person in whose charge the same may be, who shall permit the same to run at large within the limits of the city of La Crosse contrary to the provisions of this ordinance, shall on conviction thereof before the justice of the peace of the city at large be punished by a fine not exceeding ten dollars nor less than one dollar."

The plaintiff's claim is that the ordinance was enacted for the purpose, among others, of protecting persons lawfully upon the streets from injury resulting from the viciousness or playfulness of horses or cattle at large, and hence that an infraction of the ordinance is negligence *per se*, which, if it results in injury to a passenger on the street, constitutes actionable negligence. *Smith v. Milwaukee B. & T. Exchange*, 91 Wis. 360. In response to this claim the defendant makes two replies: first, that the horse was feeding in front of the plaintiff's own land, and hence there was no violation of the ordinance; and, second, that the ordinance was not enacted for the purpose of protecting persons from injury, and hence that its violation cannot be ground for a claim of negligence upon which an action for personal injury can be founded.

As to the first of these claims of the defendant, we think it quite plain that it is not well founded. The ordinance is not happily worded, but its purposes are quite plain. Those purposes are to prevent the running at large of animals in the street, to prevent their being herded or pastured in the street, and to prevent their grazing or feeding in the street. There is no exception to the prohibition against their running at large, but there is an exception to the prohibition

against grazing or feeding, which exception consists simply in permitting such grazing or feeding in front of the owner's premises. This exception cannot be reasonably construed as meaning that, when an animal which is running at large happens to crop the grass for a few moments in front of its owner's premises, it ceases to be running at large. An animal which is unattended and untethered in the street is as much at large when in front of its master's premises as in any other part of the street. In order to be within the exception, we think it clear that the animal must not only be in front of its master's premises, but must also be attended or be securely tethered and not at large.

As to the claim that the ordinance was not intended to protect persons from the viciousness or playfulness of animals at liberty upon the highway, we think it is equally untenable. Doubtless there were several objects in view. It was probably not expected that chickens or poultry would inflict bodily injuries on passengers, and, as to this class of animals, the only object was to prevent the well-known nuisance and danger of their committing depredations on private property which result from their being at large. As to larger animals, such as horses and cows, doubtless the same object was in view, but we see no reason to doubt that the obviation of other dangers was also aimed at. That such animals at large in the street are dangerous to passengers is a well-known fact. They are liable to run, to play, to excite other horses, dash along sidewalks, and do numerous things well calculated to cause injury to both persons and property. There are few grown persons who will not turn aside and seek to avoid proximity to a horse at large upon the street, especially if he be gamboling or running. They will do this because they feel that there is personal danger in such proximity, and a danger which is hard to be guarded against, because of the sudden and unaccountable movements which the animal may at any time make,

Decker vs. McSorley.

even if he be not vicious. To say that the common council of La Crosse had no intention of guarding the public against such dangers in enacting the ordinance would, we think, be entirely unreasonable, and would, in effect, accuse them of passing ·an elaborate law to protect lawns and sidewalks from disfigurement and leave life and limb unprotected. The principle that the owner of a horse which is allowed to run at large upon the highway contrary to law is responsible for the injuries which the horse inflicts upon persons or property, even in the absence of known viciousness of the horse, has been distinctly laid down in a number of states. *Baldwin v. Ensign,* 49 Conn. 113; *Decker v. Gammon,* 44 Me. 322; *Barnes v. Chapin,* 4 Allen, 444.

Having concluded that the ordinance was intended for the protection of passengers in the street against just such injuries as occurred in the present case, and that the evidence here does not show that the horse was within the exception contained in the ordinance at the time the boy was hurt, we proceed to the consideration of various alleged detail errors:

The court allowed a number of witnesses to testify that the horse was frequently at large upon the public streets prior to the accident, and this ruling is claimed to be error. We think the evidence was rightly admitted. The ordinance prohibits and punishes the *permitting* of animals to run at large. The mere accidental escape of an animal, without the owner's knowledge or negligence, would clearly not be a violation of the ordinance. It was competent and in fact necessary, therefore, for the plaintiff to show in some way that the horse was at large with the knowledge and assent or permission of the owner. It was a case where the knowledge or intent of the defendant was in question, or, perhaps more accurately, where it was necessary to show that the act in question was not accidental; and in such cases the rule is quite well settled that similar acts, though collateral

in their nature, may be shown, as tending to throw light on the knowledge or intent of the party. 1 Jones, Ev. §§ 145, 146; *Huganir v. Cotter*, 92 Wis. 1.

The court refused to instruct the jury that "the absence of the child from home, unattended, on a public street, was *prima facie* evidence of negligence on the part of the parents, and there is no evidence in the case which tends to show justification or excuse for their failure to look after him," and this refusal is now claimed as error. The instruction so asked was tantamount to an instruction that contributory negligence was proven as matter of law. It must be remembered that contributory negligence is a defense, and that, unless the facts which show it appear by the evidence introduced by the plaintiff, it must be proven by the defendant. *Randall v. N. W. Tel. Co.* 54 Wis. 140. The only facts appearing here bearing upon the question were that the deceased was a strong boy, four and one-half years of age, and was upon a public street, unattended, at about 9 o'clock in the morning. It is not shown whether the street was largely traveled, but it was evidently a mere residence street, and may not have been traveled to a much greater extent than a country highway. A railroad track, frequently used, crossed the street at a distance of about a block from the plaintiff's house. It is true that in Massachusetts it has been held contributory negligence for a mother to allow a child twenty months of age to escape from her sight and stray into the street and there remain for fifteen minutes without attendance or attention. *Grant v. Fitchburg*, 160 Mass. 16. We are not inclined to approve so strict a rule as this, and, furthermore, in the present case the child is nearly three years older than the child involved in the Massachusetts case cited. It may well be that circumstances might arise where a court would be well justified in deciding the question of contributory negligence as matter of law. If, for instance, a parent knowingly per-

Decker vs. McSorley.

mitted a child of very tender years to go alone and unattended upon the main streets of a great city, where travel was great and constant, such a case might perhaps be presented. But the present is certainly not' such a case. The street in question here may have been a rarely used street. If it was otherwise, the burden lay on the defendant to prove the fact. The child may have only momentarily escaped from its mother's care, under circumstances which would exonerate her from all lack of due attention. If not, the burden was also on the defendant to prove the fact. Ordinary care on the part of the parent is all that is required. We cannot say that the evidence here shows lack of ordinary care. It is a well-known fact that children of four and one-half years are frequently on the public street unattended. Whenever an accident happens to such a child through the negligence of others, must it be said that the parent is negligent, as matter of law? Such a rule would amount, practically, to a notice to all, whether rich or poor, who live in a crowded city and are blessed with children, that they must employ a nursemaid to be continually at the side of their children, or keep them locked up at home. The question was one for the jury, upon the evidence.

The trial judge charged the jury upon the subject of proximate cause as follows:

"This term, 'proximate cause,' has a certain, definite meaning in the law. It has been referred to by attorneys during the argument of the case, and proximate cause of damage to a person cannot be referred to a failure or neglect of some other person to perform some duty or act which such other party owes or was under obligations to perform, unless it appears that such damage was the natural and probable consequences of such failure or neglect, and that such loss or damage ought to have been foreseen in the light of the attending circumstances. That is, from all the circumstances in this case, before you are justified in finding that negligence of the defendant was not the proximate cause of injury to the child, you should be satisfied, from all the cir-

cumstances in the case, she ought reasonably to have foreseen that an injury to a person upon the street might be liable to happen from the horse being at large. It is not necessary, in order to warrant a finding to this effect,— that it was the proximate cause,— that the defendant should have foreseen that an injury might happen to this particular child; but if, from all the circumstances in the case, in the exercise of reasonable and ordinary care the defendant ought to have foreseen or anticipated that injury to a person on the street might be liable to happen from the horse running at large, then this element of proximate cause would be found in this case."

There was inaccuracy, if not prejudicial error, in the latter part of this instruction. In the first definition given, the jury were told that it must appear that the damage was the natural and probable consequences of the negligence, but in the subsequent clauses not only is the word "not" inserted where it manifestly renders the instruction the exact reverse of what it should be, but the element of natural and probable result is entirely omitted. Certainly the whole charge on the subject was confusing and well calculated to lead the jury astray.

Upon the subject of damages there were errors committed which certainly require reversal of the judgment. The court permitted the introduction of a mortality table showing the expectancy of life of a child ten years of age. The witness admitted that the expectancy of life of a child of four years was less than that of a child of ten, but he could not state what it was, nor did the table give it. This was clearly error. Upon the subject of damages generally, the evidence was very meager. Practically all that the testimony shows is that the child was strong and healthy, and that the father had no property and had a wife and four children. Under this condition of the evidence, we cannot say that there was any evidence which would justify the jury in. finding that there was any reasonable expectancy of pecuniary benefit to the parents from the continuance of the life of the child be-

yond its minority. It is true that there is very little of such evidence which can be introduced in any case, especially where the child is of such tender years, but this fact simply emphasizes the need of introducing all that can be obtained. In the present case the health of the parents might have been shown, their age, and the business and earning capacity of the plaintiff. All these things would have thrown some light on the subject. *Potter v. C. & N. W. R. Co.* 21 Wis. 372. Nevertheless the court submitted to the jury the question as to the pecuniary loss suffered by the plaintiff, resulting from the loss of the boy's services and help after he attained his majority, and we are unable to say what part of the damages allowed by the jury was allowed for services after majority. Nor can we say with any certainty what should have been allowed by the jury for the boy's services while a minor. We think, therefore, that it would not be possible for us to allow the plaintiff to remit any certain sum from the verdict, but that the interests of justice would be best subserved by a new trial.

*By the Court.*— Judgment reversed, and action remanded for a new trial.