## KRISTINN P. ARMANN v. D. E. CASWELL.

(152 N. W. 813.)

**Automobile — accident — damage to stock — action for — speed of machine — evidence of — distance from place of accident.**

Defendant was driving along a public highway in an automobile when he

Note.—As to duty and liability of operator of automobile with respect to horses encountered on the highway, see note in 48 L.R.A.(N.S.) 946.

As to speed of automobile as negligence, see notes in 25 L.R.A.(N.S.) 40; 38 L.R.A.(N.S.) 488 and 51 L.R.A.(N.S.) 993.

met a herd of cattle owned by the plaintiff. A heifer was injured through collision with the automobile. Evidence and instructions examined and, *held:*—

1. That the trial court was correct in excluding testimony as to the speed of the automobile at a distance so far from the accident that it could not have any effect thereon.

**Instructions — cattle running at large — testimony — question for jury.**

2. Certain instructions of the court construing § 2617, Comp. Laws, 1913, examined and *held* to be without error. The question of whether or not the cattle were running at large within the meaning of such section was properly submitted to the jury, and there was sufficient testimony to justify their finding against plaintiff.

**Instructions — duty of defendant.**

3. Instruction of the court as to the duty of the defendant in the premises examined and found free from error.

**Instructions — negligence as a matter of law — question of fact for jury — highway — section line — public road.**

4. Under the facts in this case the trial court would not have been justified in instructing the jury that defendant was negligent as a matter of law. The highway in question, while not upon a section line, was undisputedly a public road, graded and fenced, and used by the public.

Opinion filed May 14, 1915.

Appeal from the District Court of Pembina County, *Kneeshaw,* J. Affirmed.

*Geo. Peterson,* for appellant.

Our statute makes it unlawful for cattle to run at large at any time. Laws 1913, chap. 178, Comp. Laws 1913, §§ 2617–2622.

But because cattle happen to be on the highway, it does not follow that they are running at large. "Running at large" means not under control of the owner; animals that are left and permitted to roam where they may go. Hinman v. Chicago, R. I. & P. R. Co. 28 Iowa, 491; Grove v. Burlington, C. R. & N. Ry. Co. 75 Iowa, 163, 39 N. W. 248; Russell v. Cone, 46 Vt. 600; Wright v. Clark, 50 Vt. 130, 28 Am. Rep. 496.

When merely upon a highway an animal is not at large, unless by some statute its presence there is made to constitute a running at large.

2 Cyc. 443, ¶ 3; McManaway v. Crispin, 22 Ind. App. 368, 53 N. E. 840; Beeson v. Tice, 17 Ind. App. 78, 45 N. E. 612, 46 N. E. 154; Kanakanui v. Manini, 8 Haw. 710.

An animal on land of its owner, or on the land of another with permission, is not at large. 2 Cyc. 443, and cases cited.

Pasturing on the highway to the center thereof is not at large. Parker v. Jones, 1 Allen, 270.

The fee to a highway is in the landowner. The right of the public to use same is a mere incident. 15 Am. & Eng. Enc. Law, 2d ed. 415, ¶ XII, and cases cited, 416 ¶ 2, and cases cited.

The accidental killing of an animal will not relieve from liability, even if the animal was at large. 2 Cyc. 418, 433, and cases cited.

The common-law duty of the owner and operator of an automobile upon the highway is to use it with that degree of prudence and consideration for the rights of others which is consistent with their safety. Shinkle v. McCullough, 116 Ky. 960, 105 Am. St. Rep. 249, 77 S. W. 196, 15 Am. Neg. Rep. 63; Knight v. Lanier, 69 App. Div. 454, 74 N. Y. Supp. 999, 12 Am. Neg. Rep. 157; Murphy v. Wait, 102 App. Div. 121, 92 N. Y. Supp. 253.

It is the duty of such person to keep a proper lookout, and to keep his machine under such control as will enable him to avoid collisions, and, if necessary, he shall slow up and stop. Thies v. Thomas, 77 N. Y. Supp. 276; Buscher v. New York Transp. Co. 106 App. Div. 493, 94 N. Y. Supp. 798, 18 Am. Neg. Rep. 575; Knight v. Lanier, 69 App. Div. 454, 74 N. Y. Supp. 999, 12 Am. Neg. Rep. 157; Kathmeyer v. Mehl, — N. J. L. —, 60 Atl. 40, 17 Am. Neg. Rep. 688; Hennessey v. Taylor, 189 Mass. 583, 3 L.R.A.(N.S.) 345, 76 N. E. 224, 4 Ann. Cas. 396, 19 Am. Neg. Rep. 285; Davis v. Maxwell, 108 App. Div. 128, 96 N. Y. Supp. 45.

His degree of care must be commensurate with its liability to do injury. Hannigan v. Wright, 5 Penn (Del.) 537, 63 Atl. 234; Clune v. Wright, 96 Wis. 630, 71 N. W. 1041; McIntyre v. Orner, 166 Ind. 57, 4 L.R.A.(N.S.) 1130, 117 Am. St. Rep. 359, 76 N. E. 750, 8 Ann. Cas. 1087; Harlow v. Standard Improv. Co. 145 Cal. 477, 78 Pac. 1045.

In this case, the defendant, in speeding up his machine before he was past the cow he struck, did not use "reasonable" care. Kessler v.

Washburn, 157 Ill. App. 532; Thies v. Thomas, 77 N. Y. Supp. 276; Navailles v. Dielmann, 124 La. 421, 134 Am. St. Rep. 508, 50 So. 449; Garside v. New York Transp. Co. 146 Fed. 588; Caesar v. Fifth Ave. Coach Co. 45 Mich. 331, 90 N. Y. Supp. 359.

The true question is whether the accident could have been avoided by using ordinary care.  Arseneau v. Sweet, 106 Minn. 257, 119 N. W. 46; Simeone v. Lindsay, 6 Penn. (Del.) 224, 65 Atl. 778; Hannigan v. Wright, 5 Penn. (Del.) 537, 63 Atl. 234.

Courts will take judicial notice of the fact that automobiles on the highway have a tendency to frighten animals.  The driver therefore should use due care to prevent accidents.  Rochester v. Bull, 78 S. C. 249, 58 S. E. 766; McCummins v. State, 132 Wis. 236, 112 N. W. 25; Salminen v. Ross, 185 Fed. 997.

A cyclist has the burden of disproving negligence, when he rides up behind another who is walking where he has the right to walk, and, without giving any warning strikes and injures such person.  Myers v. Hinds, 110 Mich. 300, 33 L.R.A. 356, 64 Am. St. Rep. 345, 68 N. W. 156; Spina v. New York Transp. Co. 96 N. Y. Supp. 270; Heath v. Cook, — R. I. —, 68 Atl. 427; 38 Cyc. 1602, et seq. ¶¶ "e" and "f" and cases cited; 46 Century Dig. §§ 569, 570, 584, and cases cited.

Any intelligent person who saw the machine at the time in question, being held competent to testify as to its speed, the qualification of the witness to judge accurately goes to the *weight* of such testimony, rather than to its competency  Shaffer v. Coleman, 35 Pa. Super. Ct. 386; Wolfe v. Ives, 83 Conn. 174, 76 Atl. 526, 19 Ann. Cas. 752 · Matla v. Rapid Motor Vehicle Co. 160 Mich. 639, 125 N. W. 708; Miller v. Jenness, 84 Kan. 608, 34 L.R.A.(N.S.) 782, 114 Pac. 1052; Neidy v. Littlejohn, 146 Iowa, 355, 125 N. W. 198; Porter v. Buckley, 78 C. C. A. 138, 147 Fed. 140; Johnson v. Coey, 237 Ill. 88, 21 L.R.A. (N.S.) 81, 86 N. E. 678; Zoltovski v. Gzella, 159 Mich. 620, 26 L.R.A.(N.S.) 435, 134 Am. St. Rep. 752, 124 N. W. 527; Hough v. St. Louis Car Co. 146 Mo. App. 58, 123 S. W. 83; Dugan v. Arthurs, 230 Pa. 299, 34 L.R.A.(N.S.) 778, 79 Atl. 626; State v. Watson, 216 Mo. 420, 115 S. W. 1011.

As to the weight to which such opinion evidence is entitled, is wholly a matter for the jury.  Himmelwright v. Baker, 82 Kan. 569, 109 Pac. 178; Nesbit v. Crosby, 74 Conn. 554, 51 Atl. 550; United Brew-

·eries Co. v. O'Donnell, 221 Ill. 334, 77 N. E. 547; Brown v. Swanton, 69 Vt. 53, 37 Atl. 280; Myers v. McFarland, 31 Pa. Co. Ct. 49.

*Gray & Myers* and *J. E. Garvey,* for respondent.

It is beyond dispute that, at the time of the accident, the cattle were running at large.

Where cattle are left to stray at will along the public highway without anyone in immediate attendance upon them or claiming any oversight of them, they are, for such time, "running at large." Donley v. Fowler, 147 Mich. 288, 110 N. W. 1097; Nehr v. State, 35 Neb. 638, 17 L.R.A. 771, 53 N. W. 589.

The words, "running at large," in the sense in which they are used, mean *running on the public highway or road,* or off from the owner's premises without any person in charge or near at hand with oversight. Leonard v. Doherty, 174 Mass. 565, 55 N. E. 461, 7 Am. Neg. Rep. 55; Allen v. Hazzard, 33 Tex. Civ. App. 523, 77 S. W. 268; Decker v. McSorley, 111 Wis. 91, 86 N. W. 554; Goener v. Woll, 26 Minn. 154, 2 N. W. 163.

In no aspect do the facts in this case raise a presumption of negligence on the part of the defendant. 29 Cyc. 589–C; Heckman v. Evenson, 7 N. D. 173, 73 N. W. 427; Pyke v. Jamestown, 15 N. D. 157, 107 N. W. 359; Pendroy v. Great Northern R. Co. 17 N. D. 433, 117 N. W. 531; Kunkel v. Minneapolis, St. P. & S. Ste. M. R. Co. 18 N. D. 367, 121 N. W. 830; Solberg v Schlosser, 20 N. D. 307, 30 L.R.A.(N.S.) 1111, 127 N. W. 91.

A witness need not be an expert in order to be permitted to give his opinion of the rapidity of motion of familiar objects like railway trains and street cars, but he must be shown to have had and to have availed himself of an opportunity for *observation* in the case in hand. Mathieson v. Omaha Street R. Co. 3 Neb. (Unof.) 743, 92 N. W. 639; Wright v. Crane, 142 Mich. 508, 106 N. W. 71, 19 Am. Neg. Rep. 336.

It is the rule of the law of damages that where an animal is killed and its body possesses a monetary value, the measure of damages is the difference between the animal alive and its value after death. 13 Cyc. 149; Atchison, T. & S. F. R. Co. v. Bivins, — Tex. Civ. App. —, 136 S. W. 1180; Boing v. Raleigh & G. R. Co. 91 N. C. 199; Roberts v. Richmond & D. R. Co. 88 N. C. 560.

There is no evidence on this matter in this case. Kime v. Bank of Edgemont, 22 S. D. 630, 119 N. W. 1003; Munier v. Zachary, 138 Iowa, 219, 18 L.R.A.(N.S.) 572, 114 N. W. 525, 16 Ann. Cas. 526, Greene v. Murdock, 1 Cal. App. 136, 81 Pac. 993; Ingemarson v. Coffey, 41 Colo. 407, 92 Pac. 908; Morrow v. Laverty, 77 Neb. 245, 109 N. W. 150; State Bank v. Carroll, 81 Neb. 484, 116 N. W. 276.

Burke, J. Plaintiff is a farmer living about one mile and a half west of the village of Gardar on the road to Milton. Said public road between said villages divides plaintiff's farm almost in two, from east to west, is graded, and has a ditch and fence on each side thereof. At one side of the road is a telephone wire strung upon poles. Plaintiff's buildings are north of said road between 250 and 275 feet therefrom, and there is a lane running from the buildings to said road. The intervening ground is covered with timber and undergrowth, being situated some short distance from the Park river. Further from the road than the buildings is a creek at which plaintiff's stock were accustomed to drink. Across the road from the buildings and about 40 rods east thereof, plaintiff has a little pasture of 11 acres in which upon the 31st of October, 1913, he was pasturing about 20 head of cattle. Shortly before 4 o'clock in the afternoon of said day, plaintiff's father went to this pasture for the purpose of bringing said cattle therefrom to the buildings for water. This necessitated the opening of the gate from the pasture, so that the cattle might pass out upon the public road aforesaid along which they would proceed and up the lane leading to the house, on their way to water in the creek aforesaid. On this occasion, however, the old gentleman decided to allow the cows to make their way home, and proceeded himself through the bushes and trees to the buildings where plaintiff and a hired man were working. The cattle, left alone, were making their way leisurely along the highway towards the lane which led to plaintiff's buildings, when defendant came from the west along the Milton road. He was at that time a traveling salesman of the Standard Oil Company, an elderly man, and making his territory by auto upon the company's business. With him was the witness Volkner, also a traveling man, who was also making his territory upon business. According to defendant's testimony, he had been running between 20 and 25 miles an hour before he reached

the cattle. Upon approaching them, according to his testimony, he slowed down and even came to a stop. When he had passed all of the cattle but one, he noticed that this last one, a heifer, was about to pass on his left side, and proceeded to speed up the automobile from low to high gear. The heifer changed her mind and jumped in front of the automobile and was injured. The only witnesses to the accident were the two men in the automobile who have testified at length, and plaintiff's hired man, who, however, was at such a distance and whose view was so obstructed by trees and bushes that it is entitled to much less weight than that of the defendant and his companion. Plaintiff himself was at the buildings, and noticed the automobile approaching, but paid no further attention to it, and was not looking at the time the accident happened. Neither did the father see the collision. The hired man testifies that he was seventeen years of age, and that he saw the automobile approaching from the west while he was at the granary. He says: "I saw the automobile coming from the west and pass through the cows and strike one of the cows. Q. Was this automobile going fast or slow at the time it struck the cow? A. It was going very fast." Upon cross-examination he identified a photograph which was offered in evidence, and testifies that there was timber along the road, on the north side of the road running up past the place of the accident.

He was asked:

Q. Now, this timber runs up from this roadway, up past the place where the accident was supposed to have taken place?

A. Yes, sir.

Q. Now, looking at this picture, does that show you the kind of timber that was along the north side of that road?

A. No, sir.

Q. Can you locate this at all?

A. I think I can. . . .

Q. Now, this timber that is shown here continues east from this gate, does it not?

A. Yes, sir.

Q. And then it also continues west the way it is shown here?

A. It is not as thick further west.

Q. This is a picture of that timber, is it not?

A. It is not as thick as further west.

Q. This is the gateway that you refer to? Put an X at the place you refer to as the gateway.

A. Here is where the gate is supposed to be.

Q. Now, how far was it from the gate where you say this accident occurred?

A. It was about 20 feet. . . .

Q. Now, looking at this picture, the buildings would be up the road?

A. Yes.

Q. Then it would be towards that timber as shown in this picture?

A. Yes, sir.

Q. Now, can you see in this picture where the road comes into the house down there?

A. No, I can't see that there.

Q. And that is the way the timber looks at the place on the road shown in this picture?

A. It looks here to be more than there is. . . .

Q. But you would say this is a picture of that timber, would you not?

A. Yes, sir.

Q. Now, when you say that you saw this automobile running through the cattle, in order to see them you would have to look through these trees, would you not?

A. Yes, sir.

Q. Now, after the automobile passed the roadway that you referred to, it was going away from you, was it not?

A. Yes, sir.

Q. Now, that timber that you refer to as being on the north side of the roadway running east is pretty heavy brush in there? There is pretty heavy brush in there, near the bottom of that timber, is there not?

A. Not very.

Q. There is considerable in there, is there not?

A. A little, yes.

Q. And some of the trees are pretty high, are they not?

A. Yes, sir.

The picture which is in evidence, and cannot be reproduced, shows trees of about the same height as the telephone poles, and five or six

times as tall as a man, and so thick that nothing is shown behind them in the picture. So much for plaintiff's testimony as to the manner of the accident.

The testimony of the defendant, which is, by the way, fully corroborated by the other passenger, is as follows:

At the time it passed the opening (by plaintiff's house) I was probably going 20 miles an hour. . . .

Q. Tell the jury how fast you were going between that opening and the place where this accident happened.

A. I slowed down and went most of the way on low speed, 5 or 6 miles an hour, probably 8 miles an hour. I did not go all the way the same.

Q. Were there some cattle between these two points?

A. Yes, sir.

Q. About how many?

A. I would judge 15 or 20. . . .

Q. About how far from the roadway were the first of the cattle?

A. I would judge about 150 feet—over 100—about 150 feet.

Q. Now, when you got up as far as the first of the cattle, how fast were you going then?

A. I had to nearly stop. Three of them were standing right in the middle of the road, I had to practically stop. I was on low speed.

Q. How fast were you going from the time you nearly stopped up to the time that you got up to the gate?

A. I am positive that I did not at any time exceed 8 miles an hour.

Q. About where did you get tangled up with this heifer, in reference to the opening going up to the house?

A. About 20 or 25 rods.

Q. Did you notice when you came up on the cattle whether anyone was in attendance or whether anyone was around there?

A. I did not see a soul, and I looked.

Q. Now, which way were these cattle heading when you first came upon them?

A. They were not heading any particular way,—they were headed some one way, some another. They were simply loitering on the road. Some were feeding.

Q. Now, where was this heifer that you got tangled up with? Where was she when you noticed her first?

A. She was the farthest to the east. She was not very far when I noticed her first to when I came in contact with her. She was standing on the north side of the road. . . . As I remember, she was standing facing the east at the north side of the road, and I turned out a little to the right to go by her to the west, and she turned a little to my left as if she were going towards the weeds, and as I got to within 4 or 5 feet of her she turned right back and went diagonally across in front of me. When she turned off to the left, I speeded up, thinking she was going on and that it was pretty safe to go by. Then she started right back across in front of me, and on a Ford the brake and clutch are all of them right together, and I must have applied all of them, because I killed the engine. The engine was dead when we stopped, and whether she kicked the car or we ran into her, I do not know, but I know I did not hit her enough to feel the jar, except when she pulled us down into the ditch. I think her foot got into the axle of the car and she drew us down into the ditch, but she released herself and got out of the way before I could get out of the car to see how badly the car was damaged, and I found no particular damage; and then I said to Mr. Volkner, 'What shall we do—go back and tell these people about this?' and he said, 'I don't know,' and then I said, 'I guess I had better,' and just then he said, 'They are coming now,' so we waited until they came up. . . . I did not feel any jar. It was not hard enough for that, but she seemed to pull me off towards the ditch. I think her leg was caught in the axle—that is the only explanation I can make unless she kicked it in there in some way. There was absolutely nothing hurt on the front of the car; lights and radiator were not jammed. The right-hand fender was bent slightly, but it might have been that way before that. It was slightly bent.

He further testifies that he had driven an automobile for six years, and was fairly experienced in the handling of the machine. Upon cross-examination he testified that the radius rods were slightly bent, and that the cow was probably 12 or 15 feet from him when he saw her.

Q. It was the last cow?

A. Yes, sir.

Q. And then you say you speeded up?

A. Yes, a little.

Q. And as you speeded up, what did the cow do?

A. When I got up to within 5 or 6 feet of her she started across the road.

Q. How fast were you going when she made that start?

A. I can't say, perhaps 8 miles an hour.

Q. Then what did you do?

A. I threw out the clutch and applied the brakes. I must have pressed upon both levers, for I killed the engine.

Q. And thus your machine was stopped before you came up to the cow?

A. The engine was stopped.

Q. Did it stop before you came up to the cow?

A. It did, about the same time I came up to it. . . .

Q. Was it the cow that moved up to the auto, or was it the auto that moved up to the cow at the time the accident took place?

A. I guess the auto moved into the cow.

Q. I thought you said a while ago that the auto stopped before the auto struck the cow or the cow struck the auto.

A. The *engine* was stopped, but the auto was still moving some. As near as I can tell the engine was stopped.

Q. The engine was stopped, but the machine was moving along?

A. Yes, it was moving along.

Mr. Volkner was a witness and testifies to practically the same state of facts.

He says:

The heifer was on the north side of the road. It looked as if she was going to stay on the north side of the road, and when Mr. Caswell got within a few—well, may be a rod of her—she seemed undecided in which way to go, and Mr. Caswell turned a little to the right and started to speed up his machine, thinking that it would be safe to go on.

Q. Which way did you turn?

A. We turned to the right.

Q. Away from the heifer?

A. Yes, away from the heifer; and as we got within a few feet of her, she swung around, and started across the road, and went in a southeasterly direction, and Mr. Caswell threw the brakes on the engine and tried to stop, but killed the engine, and the automobile just ran into the animal in some way, and she got her gambled joint in some way in the car, and in some way she dragged the car, or right-hand wheel, over into the ditch, and the engine was dead at the time we hit the animal.

Q. Did you notice the instant her leg became broken?

A. I heard something snap as the cow was trying to get her leg from underneath the automobile.

Q. When was that?

A. After the automobile stopped.

And again he testifies:

Q. Do you know, Mr. Volkner, whether or not you could see Mr. Arman's place, his house from the place of the accident?

A. I could see the tops of the buildings, that is all. . . .

Q. Did you notice whether or not anyone was in attendance of these cattle when you first came upon them?

A. There was not.

Q. Did you notice anybody around there?

A. No.

Plaintiff asks $75, which he claims was the value of the heifer at the time and place mentioned. He claimed that he was obliged to butcher her on account of her injuries. Upon a trial to the district court, plaintiff offered the testimony of his hired man, which we have already mentioned. And the defendant offered his testimony, and that of his companion, which we have also set forth. At the close of the testimony the court refused to direct a verdict for defendant, but submitted the issue to the jury, who returned a general verdict for the defendant. Plaintiff appeals, alleging as error certain rulings of the trial court in the exclusion of evidence and certain instructions of the court. We will treat the same rather briefly.

(1) The first error argued in the brief relates to the exclusion of the testimony of plaintiff, his father, and the hired man, to the effect that the automobile was running at a very high rate of speed when approach-

30 N. D.—27.

ing and passing the house. There is no error in this ruling. For one reason, because it is conceded that the cattle were at least a hundred feet down the road from the buildings, and defendant had plenty of time to have reduced the speed of his car after passing the buildings and before meeting the cattle, while the animal injured was some 600 feet further, and it would, therefore, be immaterial at what speed he was approaching the building, as excessive speed at that time would have no connection whatever with the accident.

(2) The next objection goes to the instructions of the court and certain rulings made by the trial court along the same lines. The instructions excepted to read as follows: "And it is also the duty of other people to see that they do not let their cattle run at large on a public highway so as to endanger public safety." And again: "In this case, gentlemen of the jury, under our laws as amended in 1913, cattle are not allowed to run at large at any time of the day, and while a person would have a perfect right to drive his cattle along the highway to water, or anywhere else, but if so they should be driven by and in charge of some person at the time they are on the highway. They have no right to allow them to congregate on the highway and feed there, unless they are in charge of some person. They have no right there." Plaintiff objects to those instructions upon the grounds that the proof does not show that the cattle were running at large, but were moving along the roadway on plaintiff's land and in his sight and that of his servants. There is little dispute between the appellant and respondent in this case as to the law. They, however, differ materially as to the facts. Plaintiff insists that he saw the cattle at all times, and they were in effect under his control, and that, therefore, under the well-defined rules of law they were not at large. At volume 1, R. C. L. page 1145, the law relative to animals running at large is set forth, and from it we quote: "However, the manifest danger to travelers of permitting domestic animals to roam at will on the highways has given rise . . . to the adoption of statutes or ordinances prohibiting their owners from allowing them to be at large, and, in the event of a failure to comply therewith, either making them liable to all damages naturally flowing therefrom, or subjecting them to indictment, or to the payment of fines or penalties as a consequence of such infraction." Section 2617, Comp. Laws 1913, reads as follows: "It shall be unlawful for cattle, horses,

mules, swine, goats, and sheep to run at large at any time, except as hereinafter provided." This is a complete departure adopted by chapter 178, Sess. Laws 1913, Comp. Laws 1913, §§ 2617–2622, from the old-established herd law of this state. The question, then, of whether or not the cattle were running at large was to be determined from the evidence in this case. Had the trial court directed a verdict for the defendant upon the grounds that said cattle were running at large, contrary to law, and that the undisputed evidence disclosed that the defendant was guilty of no negligence in the premises, a different state of facts would exist. However, the trial court did not so direct, but on the contrary, under proper instruction, left those questions for the determination of the jury. By the jury's verdict it was determined that the cattle were running at large, contrary to law, and that the defendant was guilty of no negligence. The quotation from the judge's charge, is not even a complete sentence, but is an excerpt containing merely a clause. The court gave full and fair instructions upon the law, among other things, saying: "The burden of proof is upon the plaintiff to satisfy you by a fair preponderance of the evidence as to the truth of all of the material allegations in the complaint, and the burden of proof is upon the plaintiff to satisfy you by a fair preponderance of the evidence that, in driving his automobile, the defendant was careless and negligent, and used excessive speed, and was reckless as alleged in the complaint, before he can recover in this action." This is a correct statement of the law. The plaintiff contends that the burden of proof was upon the defendant to establish that he was not negligent, because "the uncontradicted testimony, even the defendant's own testimony, shows that he could have avoided the accident." This is upon the supposition that the evidence disclosed negligence upon the part of the defendant. We do not believe the evidence will bear this interpretation.

There certainly is testimony that the cattle were roaming at large upon the highway, although they may incidentally have been slowly working their way homeward. The animal injured was at least an eighth of a mile from the buildings where plaintiff's witness was standing, the intervening space being admittedly heavily timbered. There is some question as to whether or not any of the cattle were in sight from the buildings at the time of the injury, and the photograph makes it clear that the injured animal could not have been seen therefrom. The

spirit of the law is that some person shall be near enough to cattle to protect passers-by and adjacent property, and also to protect the cattle from passers-by, otherwise they are running at large. There is no error in the instruction complained of, of which appellant can take advantage.

(3) The next error assigned is the giving of the following charge: "Now, in this case, if you should find by a fair preponderance of the evidence that the defendant was traveling along the public highway, and came to these cattle, and saw this last cow as they testified to, on the side of the road, and, in order to get past and in believing he could get past, he speeded up his automobile, and the cow or heifer ran in front of him and was, thereby, injured, and that the defendant was using ordinary care in traveling on that road to get past them and to avoid the injury, then the defendant in this action is not liable, and you should so say by your verdict, and find your verdict in favor of the defendant." Appellant's objection to this charge is that it presupposes a state of facts not in existence, and is an erroneous statement of the law. However, we believe that the facts warrant this assumption, and there is no question about the legal principles therein stated being sound. Appellant claims that it relieves defendants of any consequences of a mistake of judgment in doing what he did. In view of the fact that the jury found that the animals were trespassing upon the public highway, plaintiff owed them no duty excepting to use ordinary care to prevent their injury, and there is no error therein. Taken as a whole, the charge is a fair statement of the law applicable to the facts in this case.

(4) In this assignment appellant insists that defendant was negligent, under his own testimony, in speeding up the machine at the time he believed the heifer would pass him on the north. In support of this position, he cites the testimony of the hired man, to the effect that defendant was going fast, and making a loud noise, and threw up a great deal of dust as he went past the roadway on which the cattle were standing. It is probably appellant's contention that the jury should have been instructed that this made the defendant liable for damages. We do not believe a fair reading of the testimony convicts defendant of negligence as a matter of law. See §§ 2972, 2976, Comp. Laws 1913, construed in Messer v. Bruening, 25 N. D. 599, 48 L.R.A.(N.S.) 945, 142 N. W. 158. We will not quote from that opinion, however, at this time. See 29 Cyc. 589. Appellant lays some stress upon the fact that

this road was not upon a section line. The exact nature of the highway was not made plain by the testimony, but it was a main traveled road between those two villages, guarded by a fence on either side, and was followed by a telephone line. Plaintiff seems to concede that it is a public highway. We refer to the case of Donley v. Fowler, 147 Mich. 288, 110 N. W. 1097, in which the facts are very similar to those in the case at bar. Also Leonard v. Doherty, 174 Mass. 565, 55 N. E. 461, 7 Am. Neg. Rep. 55; Allen v. Hazzard, 33 Tex. Civ. App. 523, 77 S. W. 268; Decker v. McSorley, 111 Wis. 91, 86 N. W. 554.

In conclusion. This is a case in which the defendant was upon a public highway in an automobile upon business. There is not the slightest indication of a joy-riding expedition. The case was fairly tried and submitted to a jury, who found that defendant was guilty of no negligence in his conduct which would support a verdict. There are no errors, and the case is in all things affirmed.